[Cite as *Whitman v. Gerson*, 2016-Ohio-311.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| VIRGINIA WHITMAN, | : | APPEAL NOS. C-140592 |
| | | C-140595 |
| BRUCE WHITMAN, | : | TRIAL NO. A-1209426 |
| ANDREW WHITMAN, | : | |
| and | : | *O P I N I O N.* |
| JACOB WHITMAN, | : | |
| Plaintiffs-Appellants/Cross-Appellees, | : | |
| | : | |
| vs. | : | |
| | : | |
| MICHAEL GERSON, d.b.a. THE GERSON COMPANY, LTD., | : | |
| Defendant-Appellee/Cross-Appellant, | : | |
| and | : | |
| | : | |
| MARCUS TORAN, et al., | : | |
| Defendants. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  January 29, 2016

*Lindhorst & Dreidame, James F. Brockman* and *David E. Williamson*, for Plaintiffs-Appellants/Cross-Appellees,

*Law Office of Terrence L. Goodman* and *Terrence L. Goodman*, for Defendants-Appellees/Cross-Appellants.

Please note:  this case has been removed from the accelerated calendar.

STAUTBERG, **Judge.**

{¶1}   This case arises out of a serious dog bite suffered by plaintiff-appellant/cross-appellee Virginia Whitman that occurred on September 22, 2012. On that day, Mrs. Whitman was on Winton Road knocking on doors to inquire if she could place signs in yards for her husband's political campaign.   When Mrs. Whitman knocked on the door of the home on Winton Road that was occupied by defendants Marcus Toran, Charles Toran, and Kimberly Toran, she was allegedly attacked by a dog owned, kept or harbored by the Torans, and suffered serious injuries.

{¶2}   The Winton Road home was owned at that time by Charles and Kimberly Toran.   The Torans had purchased the property in August 2008 from defendant-appellee/cross-appellant Michael Gerson, d.b.a. The Gerson Company Ltd., ("Gerson")[1] for $120,000.   At that time, Charles and Kimberly Toran executed a note for that amount payable to Gerson, and also executed a mortgage on the property as security for the note.

{¶3}   Four days after the dog-bite incident, an entity known as Woods Cove, LLC, filed a foreclosure action against Charles and Kimberly Toran and Gerson based on a tax certificate it obtained through a public auction.   On October 17, 2012, Charles and Kimberly Toran conveyed the Winton Road property to Gerson via a deed in lieu of foreclosure ("deed in lieu").

{¶4}   Joining Mrs. Whitman in the case as plaintiffs-appellants/cross-appellees are her husband, Bruce Whitman, and their children.   The Whitmans filed

---

[1] The Gerson Company Ltd. was, at all pertinent times, a separately organized legal entity.  It was the mortgagee and transferee of the Winton Road property.   However, throughout the proceedings, little or no distinction has been made between Michael Gerson and The Gerson Company Ltd. and we will not do so here.

the underlying complaint against the Torans,[2] and also against Gerson, claiming that the property transfer from Charles and Kimberly Toran to Gerson was a fraudulent conveyance and subject to rescission. The Whitmans moved the trial court for a temporary restraining order and preliminary injunction to prevent further transfer of the property. Initially, Gerson entered into an agreed order prohibiting further disposition of the real estate, for which no bond was required, pending further order of the court. Thereafter, Gerson moved the court to dissolve the restraining order or require a bond. The trial court denied the motion to dissolve the restraining order, but ordered that the Whitmans post a bond in the amount of $10,000, which they did. Gerson answered the complaint and counterclaimed for quiet title, a declaratory judgment that the property transfer was not fraudulent, and damages for slander of title, including attorney fees incurred in defending the action and injunctive relief sought by the Whitmans.

{¶5} Thereafter, Gerson filed a "Motion for Summary Judgment, Motion to Terminate Restraining Order, [and] Motion to Forfeit Security." Approximately nine months later, while the motion for summary judgment was pending, Gerson moved the trial court to increase the amount of the bond to $50,000, claiming that a proposed deal to sell the property fell through due to the existence of the restraining order. Shortly thereafter, the Whitmans voluntarily withdrew the restraining order and requested an order from the trial court releasing the previously posted bond. Gerson, in turn, opposed the Whitmans' request for release of the posted bond, and reiterated his claim that the bond should be forfeited and that he should recover the proceeds therefrom. Gerson also filed a motion to dismiss the complaint and for sanctions on the basis that the Whitmans did not serve the Torans with the complaint within the time allowed by Civ.R. 4, and failed to prosecute the claim.

---

[2] The claims against the Torans allege liability based on owning, harboring, or keeping the dog that attacked Mrs. Whitman. Those claims are not at issue in this appeal.

{¶6} On December 2, 2013, the trial court granted summary judgment in favor of Gerson on the Whitman's fraudulent conveyance claim. On that same day, the trial court entered two additional separate orders; one that granted plaintiffs' motion releasing the bond and denied Gerson's motion for forfeiture of the bond and award of attorney fees; and another that denied Gerson's motion to dismiss the claims against it, and for sanctions.

{¶7} The Whitmans obtained a default judgment and award of damages against the Torans. The Whitmans then moved for summary judgment on claims remaining against them on Gerson's counterclaim. The trial court granted the Whitmans' motion for summary judgment, bringing finality to the previously-entered orders.

{¶8} The Whitmans filed a timely notice of appeal from the trial court's entry of summary judgment in favor of Gerson. Gerson filed a timely notice of cross-appeal of the trial court's summary judgment against him on his counterclaim, its denial of his motion for forfeiture of bond, and its denial of his motion to dismiss and for sanctions.

### The Whitmans' Appeal

{¶9} In their appeal, the Whitmans argue that the trial court erred in granting summary judgment to Gerson on their claims against him. We review the granting of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Grafton*; *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

{¶10} Essentially, the Whitmans argue that the trial court erred in finding that Ohio's Uniform Fraudulent Transfer Act, R.C. 1336.01 et seq., did not apply to the October 2012 transfer of the Winton Road property. We disagree.

{¶11} R.C. 1336.04[3] establishes the following:

(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
>
>> (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
>>
>> (b) The debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

{¶12} The Whitmans claim that the transfer of the Winton Road property from Charles and Kimberly Toran to Gerson was done with actual intent to hinder,

---

[3] R.C. 1336.04 was amended effective March 27, 2013, but that amendment has no effect on this case.

delay or defraud them. There is no direct evidence of such an intent, so the Whitmans look to R.C. 1336.04(B) to establish badges of fraud to make their claim:

In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

R.C. 1336.04(B).

{¶13} The Whitmans argue that Gerson was aware of the injury to Mrs. Whitman when the property was transferred, and that the transfer was fraudulent and done to help the Torans avoid responsibility for the injury. The Whitmans argue, inter alia, that the Torans retained occupancy of the property; that the transfer was concealed from the Whitmans; that it was made after the Whitmans threatened a lawsuit; and that it left the Torans with no other assets.

{¶14} Regardless of the badges of fraud alleged, however, the Whitmans must first demonstrate that there is a genuine issue of material fact concerning whether a transfer of an "asset" occurred as contemplated by R.C. 1336.04. R.C. 1336.01 provides the following definitions:

(B) "Asset" means property of a debtor, but does not include any of the following:

(1) Property to the extent it is encumbered by a valid lien;

* * *

(L) "Transfer" means every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

The pertinent question is, therefore, whether the Winton Road property was an "asset" of the Torans such that the deed in lieu to Gerson would be a "transfer" covered by the Fraudulent Conveyance Statute.

{¶15} Gerson argues that the property was not an "asset" of the Torans as defined in R.C. 1336.01(B) because the property was encumbered by the $120,000 mortgage securing the note. Gerson also argues that the property is worth less than $120,000, and points to evidence that the Hamilton County auditor valued the property at $85,000.

{¶16} To deal with this problem, the Whitmans first argue that the mortgage on the property held by Gerson was a sham and illusory, and was not a valid lien. The Whitmans support this position by pointing to the fact that Gerson did not enforce the terms of the land contract with the Torans prior to the sale in 2008, and did little if anything to enforce the payment of the note subsequent to that sale. The Whitmans argue that Gerson's failure to enforce the terms of a contract or a note renders the underlying security—the mortgage—void. The Whitmans supply no legal authority for this proposition, and we are not persuaded that this argument raises a genuine issue of fact concerning whether the mortgage was a sham.

{¶17} There is no doubt that Gerson owned the property prior to 2008. The trial court found a valid mortgage lien existed on the property prior to Gerson taking back the property via the deed in lieu. Gerson's lack of diligence in enforcing the terms of the note is of no consequence. He clearly made efforts to protect the underlying property, and took action to further protect his interests upon learning of the tax certificate sale.

{¶18} The Whitmans next argue that the value of the property at the time of the 2012 deed in lieu exceeded the $120,000 lien on the property. The Whitmans supply no evidence that the value of the property exceeded $120,000. They only point to an insurance declarations page that shows Gerson had the property insured for $239,500. There is nothing in the declarations page which suggests this is a fair estimate of the existing market value of the property. Indeed, an affidavit of Gerson's insurance agent dispels any notion that the amount for which the property was insured was to represent the fair market value.

{¶19} The trial court looked to the value of the property as determined by the Hamilton County auditor, which was $85,000 at the time. R.C. 5713.03 provides:

> The county auditor, from the best sources of information available, shall determine, as nearly as practicable, the true value of the fee

8

simple estate, as if unencumbered but subject to any effects from the exercise of police powers or from other governmental actions, of each separate tract, lot, or parcel of real property and of buildings, structures, and improvements located thereon * * * .

{¶20} In *Rhodes v. Sinclair*, 7th Dist. Mahoning No. 08-MA-23, 2012-Ohio-5848, the court was faced with a similar situation. Sinclair was accused of fraudulently transferring property, including an office building that housed his law practice, in order to avoid recovery by judgment holders. The court noted that the auditor's valuation was not contested, and with the encumbrances on the property in question exceeding the valuation, the property did not qualify as an "asset" under R.C. 1336.01(B). *Id.*

{¶21} Similarly, the Whitmans have not supplied evidence sufficient to raise a genuine issue of material fact concerning whether the value of the property exceeded the $120,000 owed on the note secured by the mortgage. We agree with the trial court that the Winton Road property was not an "asset" of the Torans as defined in R.C. 1336.01(B) at the time it was conveyed back to Gerson via the deed in lieu, and that Gerson was entitled to summary judgment on Whitmans' fraudulent conveyance claim. The Whitmans' sole assignment of error is overruled.

**Gerson's Cross-Appeal**

{¶22} Gerson cross-appealed the trial court's denying his motion for forfeiture of the Whitmans' bond; granting the Whitmans summary judgment on his counterclaims; and denying his motion for sanctions against the Whitmans. Gerson asserts three assignments of error.

{¶23} In his first assignment of error, Gerson argues the trial court erred in denying his motion to order plaintiffs to forfeit their bond. Gerson argues that, because the Whitmans eventually withdrew their claim for a preliminary injunction,

he is entitled to attorney fees incurred in defending the claim for injunctive relief. The trial court denied Gerson's claim for forfeiture of the $10,000 bond posted.

{¶24} Civ.R. 65(C) provides:

No temporary restraining order or preliminary injunction is operative until the party obtaining it gives a bond executed by sufficient surety, approved by the clerk of the court granting the order or injunction, in an amount fixed by the court or judge allowing it, to secure to the party enjoined the damages he may sustain, if it is finally decided that the order or injunction should not have been granted.

{¶25} The operative question is whether "it [was] finally decided" that the injunction "should not have been granted." In this instance, there was no finding that the injunction should not have been granted. As noted by the trial court, the injunction was withdrawn by the Whitmans when they learned of Gerson's plan to sell the property. Although the voluntary withdrawal of the injunction could still be followed by a determination that it "should not have been granted," that was not the case here. The trial court found that the Whitmans acted in good faith in obtaining the injunction. Therefore, the trial court did not abuse its discretion in denying Gerson's motion seeking forfeiture of the Whitmans' bond. *See Del-fair v. Conrad Seyferth*, 1st Dist. Hamilton No. C-800277, 1981 Ohio App. LEXIS 13801 (May 6, 1981). Gerson's first assignment of error is overruled.

{¶26} In his second assignment of error, Gerson argues that the trial court erred in granting the Whitmans' motion for summary judgment on Gerson's claims for slander of title and quiet title. Gerson claims that the existence of the Whitmans' lawsuit against him alleging fraudulent transfer of the property continues to cloud the title of the property, and constituted a slander of title.

{¶27} In *Green v. Lemarr*, 139 Ohio App.3d 414, 430-431, 744 N.E.2d 212 (2d Dist.2000), the Second District found,

Slander of title is a tort action which may be "brought against any one who falsely and maliciously defames the property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss." *Buehrer v. Provident Mut. Life Ins. Co. of Philadelphia* (1930), 37 Ohio App. 250, 257, 174 N.E. 597, affirmed (1931), 123 Ohio St. 264, 175 N.E. 25. To prevail, a claimant must prove: (1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages.

*Id.,* citing *Colquhoun v. Webber*, 684 A.2d 405, 409 (Me.1996).

{¶28} Gerson claims there are questions of fact regarding the malice or reckless disregard of the falsity of the statements in the pleadings alleging a fraudulent conveyance. However, before the allegations are evaluated, we must determine whether the statements are the type upon which a claim for slander of title can lie. We find that they are not.

{¶29} The Whitmans did not record any affidavits, claims, liens, or other encumbrances with the county recorder, and the Whitmans do not claim title to the Winton Road property. Gerson bases his claim for slander of title upon the allegations in the Whitmans' complaint for fraudulent conveyance and accompanying filings for equitable relief. However, court filings are privileged from any tort action, and no slander of title claim can be based merely upon allegations in a complaint and filings, even if later found to be unsupported. *Buehrer v. Provident Mut. Life Ins. Co.*, 123 Ohio St. 264, 273, 175 N.E. 25 (1931); *see Surace v. Wuliger*, 25 Ohio St.3d 229, 230, 495 N.E.2d 939 (1986), syllabus ("As a matter of public policy, under the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a

11

cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears."). Accordingly, we find that the Whitmans' complaint and claims of fraudulent conveyance cannot form the basis of a slander of title claim, and that the trial court correctly entered summary judgment on this claim.

{¶30} Gerson also argues that the trial court wrongly granted summary judgment in favor of the Whitmans, finding that the quiet title action was resolved when the trial court previously granted Gerson summary judgment on the Whitmans' fraudulent conveyance claim. Gerson argues that the Whitmans' appeal of the fraudulent conveyance claim keeps it alive as a cloud on his title to the property.

{¶31} To accept Gerson's argument, we would have to accept the underlying premise that the allegations of fraudulent conveyance clouded his title to the Winton Road property. And we do not. The Whitmans did not file or record an affidavit, deed, or mortgage with the county recorder. They filed a lawsuit, and the allegations made therein were privileged from any claim of defamation, libel, or slander of title.

{¶32} "A cloud upon title is a title, or incumbrance, apparently valid, but in fact invalid." (Citations omitted). *Novogroder v. Di Paola*, 11 Ohio App. 374, 377, 30 Ohio C.A. 421 (8th Dist.1919). Here, the Whitmans do not claim title to the property, and the lawsuit is not an encumbrance. Rather, the Whitmans' complaint, if successful, would have simply rescinded the transfer to Gerson and restored the Torans as the owners. The Whitmans' complaint never was a cloud on the title, and the trial court did not err in dismissing the counterclaim for quiet title. Gerson's second assignment of error is overruled.

{¶33} In his third assignment of error, Gerson argues the trial court erred in denying his motion for sanctions. Gerson essentially seeks an award of sanctions based on the costs incurred in defending the fraudulent conveyance action. He

alleges entitlement to damages pursuant to R.C. 2323.51, arguing that bringing the fraudulent conveyance action was frivolous, and the Whitmans further acted frivolously in failing to take steps to perfect service in a timely manner and obtain judgment against the primary tortfeasors, the Torans.

{¶34} We review the trial court's actions under an abuse of discretion standard. *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 11. In order to succeed on appeal, Gerson must show that the denial of sanctions was "unreasonable, arbitrary, or unconscionable." *Id.*

{¶35} First, the trial court found that the Whitmans' actions in filing and maintaining the lawsuit against Gerson did not constitute bad faith. Second, the failure of the Whitmans to perfect service on the Torans within six months of filing the lawsuit cannot be considered frivolous conduct. Although the Whitmans could have been more diligent in pursuit of obtaining service on the Torans, and the trial court could have dismissed one or more of the Torans pursuant to Civ.R. 4(E), the failure to accomplish service within six months did not impact Gerson and could not constitute frivolous conduct. The record reflects that the Whitmans did ultimately obtain service on the Torans within one year as required by Civ.R. 3, and obtained a default judgment in their favor. We do not hold that the trial court abused its discretion in failing to sanction the Whitmans. Gerson's third assignment of error is overruled. The trial court's judgment is affirmed.

Judgment affirmed.

**HENDON, P.J.**, and **FISCHER, J.**, concur.

Please note:

This court has recorded its own entry this date.

13