[Cite as *State v. Brown*, 2021-Ohio-597.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :           APPEAL NO. C-190399
                                                    TRIAL NO. B-1705754-F
    Plaintiff-Appellee,          :
                                                    *O P I N I O N.*
  vs.                                  :

MONAI SHEREA BROWN,                     :

    Defendant-Appellant.         :


Criminal Appeal From:   Hamilton County Court of Common Please

Judgment Appealed From Is:  Reversed and Appellant Discharged

Date of Judgment Entry on Appeal:  March 5, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}    Defendant-appellant Monai Sherea Brown appeals her conviction for tampering with records in violation of R.C. 2913.42(A)(1).   Because Brown's conviction was based on false statements that she had made in a civil complaint, and because Brown had an absolute privilege to make those statements, we hold that her conviction was not supported by sufficient evidence.

### *Factual and Procedural Background*

{¶2}    Loie Hallug owns the property located at 511 McAlpin.  Sometime in late July or early August of 2017, Hallug received a letter from Brown dated July 27, 2017, informing him that he had abandoned his property, that she intended to take possession of the property, and that he owed her $733 for maintenance to his property.  The letter specifically stated:

In Ref:  Abandonment of Property located at 511 McAlpin Ave on the

land commonly described as Hamilton County, Ohio.

This is lawful notice.

Being duly sworn and cautioned according to law, I, the undersigned

declare the following to be true to the best of my knowledge and belief:

You, LOIE HALLUG/ (recorded owners), have permanently vacated

the above referenced property on or after the 25th day of February,

2017, with no intentions to return to said property.  It is our intent to

actually possess said property for the purposes of claiming title by

right and or adverse possession.   Available legal and/or lawful

action(s) such as complaint made against you as predecessors in

interest, in which a default judgment and or summary judgment sought against you, in which service by publication shall be made via Courtroom News with Hamilton County Clerk of Courts case number and date for this civil matter.

Note: you may still be listed as the owner of the property and still responsible for maintenance and any code violations fees/penalties.

Compensation in $733.00(US dollars under demand-12USC 411) shall be provided to me for maintenance plus any additional cost for labor and materials for repairs and improvements shall be made upon completion. Failure to provide compensation within will result in a lien being filed against the property if compensation is not provided to me within thirty(30) calendar days of completion an action to foreclose on the lien in exchange for color of title to the property.

If you have not abandoned the home and DO NOT accept my offer to provide maintenance at $733.00(US dollars under demand-12USC 411), for my labor plus all additional cost for labor and materials for repairs and improvements, please respond in writing within Ten(10) calendar days. Failure to respond is your agreement and acceptance to all that is herein.

If you wish to dispute the abandonment or our intent to claim title by right please do so in writing (sworn) under notary verification via certified mail signed in your given name or Christian name within (21) Twenty One calendars of receiving this notice to:

416 W 9th Street, Hamilton County, Ohio

{¶3} The receipt of this letter was met with surprise and concern by Hallug, who did not know Brown and had not abandoned his property or transferred ownership of it. Hallug wrote a responsive letter to Brown refuting the allegations in her communication, but Hallug's response was returned to him as undeliverable.

{¶4} Brown filed a complaint for quiet title against Hallug. The complaint asserted that Brown was the recorded legal owner of the property located at 511 McAlpin; that Hallug—whom the complaint referred to as Brown's predecessor in interest to the property—had encountered financial difficulties and become delinquent in loan payments; that Hallug "intentionally, willfully and permanently" abandoned the property with no intent to return; and that Brown had entered the property on August 1, 2017, and claimed title to it. In addition to asserting a claim for quiet title, the complaint sought injunctive relief and a declaration that Hallug abandoned the property and that Brown legally acquired ownership of it. The complaint was filed on July 21, 2017, prior to Hallug's receipt of Brown's letter.

{¶5} Hallug's counsel filed a motion to dismiss the complaint, which a trial court granted. Brown was subsequently indicted in the case at bar for tampering with records, unauthorized use of property, and theft for her actions concerning Hallug and his property.

{¶6} During a jury trial on these criminal offenses, in which Brown waived her right to legal representation and acted as her own counsel, Hallug testified that he had purchased the property located at 511 McAlpin in 2014 with his then wife. When purchasing the property, he obtained a loan and took out a mortgage on the home with Caliber Home Loans. Approximately two years later, Hallug's wife filed for divorce, and Hallug moved in with his parents while his wife remained in the

home. Hallug was ultimately awarded the home in his divorce settlement. He missed a few mortgage payments due to financial difficulties, but worked with his lender to have the mortgage modified. According to Hallug, the home was vacant for approximately two months after his wife moved out, but he visited the home and checked mail there during that period.

{¶7} Hallug testified that he was concerned after receiving Brown's letter that demanded payment from him and asserted that he had abandoned the property because he had never met Brown and had not hired her to make any improvements to his property. With respect to the complaint for quiet title that Brown filed against him, Hallug testified that it contained numerous false statements. Contrary to the complaint's assertions, he, not Brown, was the recorded legal owner of 511 McAlpin; he had not abandoned his property by permanently vacating the premises and relinquishing all rights and title to it; he had not refused to make his mortgage payments; and he never transferred ownership in the property to another person.

{¶8} Hallug explained that he incurred $1,500 in legal fees because he had to hire counsel to defend against Brown's complaint. His counsel successfully filed a motion to have the complaint dismissed.

{¶9} Kelly Early, an employee in the Hamilton County Auditor's office, testified that Hallug was the owner of 511 McAlpin, and she identified a property report generated by the Auditor's office identifying Hallug as such. The report contained a transfer history listing the previous owners of the property, and Early testified that Brown's name did not appear in that history. David Pittinger, an employee in the Hamilton County Recorder's office, identified a general warranty

deed for 511 McAlpin that was recorded in October of 2014 and testified that the deed showed that the property had been transferred to Hallug on that date.

{¶10} Brown testified on her own behalf. She explained that in 2017 she "found out about a new idea or method that had been used for years called adverse possession." She researched adverse possession and learned that she had to occupy a property for 21 years to gain title to it. According to Brown, after she discovered that Hallug's property was listed as "vacant" on the Clerk of Courts website, she filed the complaint for quiet title "in pursuit to claim it as adverse possession." She testified that after she filed the lawsuit, she sent the "letter of intent" to Hallug. But after taking those actions, she decided not to pursue her interest in the property because she was pregnant and it was a more expensive process than she had anticipated. Brown acknowledged that she never made any improvements to the property. She stated that it had not been her intention to steal Hallug's home, but that she had hoped to occupy a vacant property for 21 years to gain title to it.

{¶11} Brown conceded on cross-examination that the statement in her complaint that she was the recorded legal owner of the property was false. She also admitted that the complaint's assertion that she had entered the property was false.

{¶12} The jury found Brown guilty of tampering with records and acquitted her of unauthorized use of property. It was unable to reach a verdict on the charge of theft, and the state elected to dismiss that charge. The trial court sentenced Brown to one year in jail and ordered restitution in the amount of $1,500.

### Tampering with Records

{¶13} In her first assignment of error, Brown argues that her conviction for tampering with records was not supported by sufficient evidence.

{**¶14**} When considering a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{**¶15**} Brown was convicted of tampering with records in violation of R.C. 2913.42(A)(1), which provides that "[n]o person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record." The state alleged that Brown committed this offense by filing a complaint for quiet title against Hallug that she knew contained false statements.

{**¶16**} Brown argues that her conviction was not supported by sufficient evidence because she "has an absolute privilege with respect to the falsehood of claims that are made in the context of a judicial proceeding." She contends that the absolute privilege allowed her to knowingly make false assertions in a complaint in a civil action and prohibited her from being criminally liable for making the false statements. Privilege is defined in R.C. 2901.01(A)(12) as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."

{**¶17**} Whether a conviction for tampering with records can stem from the filing of a complaint in a civil action containing false statements is an issue of first impression. The body of case law cited by Brown in support of her actions concerns

defamation-law concepts and whether someone can be held civilly liable for false claims made in a lawsuit.

{¶18} Statements made in judicial proceedings have long been accorded an absolute privilege. In *Erie Cty. Farmers' Ins. Co. v. Crecelius*, 122 Ohio St. 210, 171 N.E. 97 (1930), syllabus, the Supreme Court of Ohio held that "[n]o action will lie for any defamatory statement made by a party to a court proceeding, in a pleading filed in such proceeding, where the defamatory statement is material and relevant to the issue." The *Erie* court explained the origin of this privilege, stating that it was necessary because "great mischief would result if witnesses in courts of justice were not at liberty to speak freely, and if they could not feel an assurance that they would not be subject to suits for slander and libel as a result of testimony freely given." *Id.* at 214. The court further stated that "attorneys should be fully protected in counseling testimony, pleadings, and other proceedings in the usual and regular course of the trial of litigated cases." *Id.* at 215. While acknowledging that public policy required such a privilege, the court recognized "that as an incidental result it may in some instances afford immunity to the evil disposed and the malignant slanderer." *Id.*

{¶19} In *Surace v. Wuliger*, 25 Ohio St.3d 229, 233, 495 N.E.2d 939 (1986), the Supreme Court of Ohio clarified the test for privilege set forth in *Erie*. It held that "as a matter of public policy, under the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears." *Id.* The court reasoned that "public policy necessitates free and unencumbered exchange

of statements in judicial proceedings in order to assist courts in the truth-seeking process." *Id.* at 234. Such public policy necessitates that the privilege apply equally to false statements, which the court acknowledged would at times lead to undesired or even unfair results, stating that "[t]he unpleasant reality of the doctrine of absolute privilege is that, at times, the party alleged to have been defamed is left with no alternative remedy to pursue." *Id.* at 234.

{¶20} The Supreme Court of Ohio recently affirmed its holding in *Surace* in *Reister v. Gardner*, Slip Opinion No. 2020-Ohio-5484, ¶ 10, stating that "we reaffirm our long-established rule that the litigation privilege provides absolute immunity from civil suits for defamatory *statements* made during and relevant to judicial proceedings."

{¶21} Brown relies on this body of law to argue that the statements made in her complaint for quiet title against Hallug are accorded an absolute privilege and cannot serve as the basis for her tampering-with-records conviction. She cites multiple cases in which the privilege was applied in tort actions to prevent civil liability on the basis of false statements made in judicial proceedings. In *Nozik v. Sanson*, 104 Ohio App.3d 671, 662 N.E.2d 1134 (8th Dist.1995), the court considered whether plaintiffs could bring a slander-of-title lawsuit against a party who had filed a judgment lien against them. The court answered that question in the negative, and held that "[a] matter published in a judicial proceeding, with some reasonable relation to the proceeding, is privileged, even if it is untrue." *Nozik* at 671-672.

{¶22} In *Whitman v. Gerson,* 1st Dist. Hamilton Nos. C-140592 and C-140595, 2016-Ohio-311, the defendant had filed a slander-of-title claim against the

9

plaintiff pertaining to allegations that the plaintiff had made in a complaint against the defendant for fraudulent conveyance. This court held that the complaint for fraudulent conveyance could not serve as the basis for a slander-of-title claim because "court filings are privileged from any tort action, and no slander of title claim can be based merely upon allegations in a complaint and filings, even if later found to be unsupported." *Gerson* at ¶ 29.

{¶23} The state contends that Brown's statements in the civil complaint she filed against Hallug can properly serve as the basis for her tampering-with-records conviction, and it cites *State v. Baumgartner*, 6th Dist. Ottawa No. OT-02-029, 2004-Ohio-3908, in support. Unlike the preceding cases, the *Baumgartner* court considered whether a defendant could be prosecuted criminally, rather than found civilly liable, for false statements that the defendant had made. In *Baumgartner*, the defendant was convicted of falsification for false statements that she had made during a city council meeting. Baumgartner, who was an attorney, argued on appeal that she had a privilege to make false statements at the council meeting because she was acting as an attorney and representing her clients at the time that the statements were made. The court rejected her argument, stating that it "refuse[d] to extend defamation law concepts to prosecutions for falsification." *Id.* at ¶ 27. And it further held that even if it were willing to extend defamation law to the criminal offense of falsification, Baumgartner's argument would still fail. *Id.* at ¶ 35. The court recognized that lawyers have immunity against libel and slander actions for statements made during the course of litigation while representing a client, but only when "the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration." *Id.* at ¶ 28, quoting 25 Restatement of

10

the Law 2d, Torts, Section 586, Comment e (1977). Because Baumgartner's statements were not made in the context of a judicial proceeding or during an ongoing case, the court reasoned that she did not have a privilege to make false statements. *Id.* at ¶ 35.

{¶24} We find *Baumgartner* to be distinguishable, as it concerned false statements made at a city council meeting, rather than in a judicial proceeding. Further, the analysis in *Baumgartner* concerned when attorneys are immune from liability for making false statements.

{¶25} Here, the state sought to criminally prosecute Brown for tampering with records based on the false statements made in her complaint for quiet title against Hallug. We have found no cases, and the parties have cited none to us, in which a defendant's statements in a civil complaint have been used as the basis for a tampering-with-records conviction. As set forth above, to convict Brown of tampering with records the state had to establish that she, with the knowledge that she had "no privilege to do so" and with the purpose to defraud, falsified a writing. *See* R.C. 2913.42(A)(1). The law is clear that statements made in judicial proceedings, including court filings, are privileged, and that a person cannot be found civilly liable in a tort action on the basis of such statements as long the statements bear a reasonable relation to the judicial proceeding in which they appear. *Surace*, 25 Ohio St.3d at 233, 495 N.E.2d 939; *Gerson*, 1st Dist. Hamilton Nos. C-140592 and C-140595, 2016-Ohio-311, at ¶ 29. Regardless of whether anyone later sought to impose civil liability on Brown, or whether the state sought to criminally prosecute her, Brown was privileged to make statements in her complaint against Hallug, even if those statements were false, as long as the statements were

reasonably related to the judicial proceeding. And the allegedly false statements in Brown's complaint for quiet title were reasonably related to that judicial proceeding, no matter how misguided the proceeding may have been.

{¶26} Because the statements made in Brown's complaint for quiet title against Hallug were privileged, even if those statements were false, the state failed to establish that Brown falsified a writing knowing that she had "no privilege to do so," as was necessary to prove that she had tampered with records. *See* R.C. 2913.42(A)(1). To be certain, Brown's actions in this case were egregious, and we do not minimize the harm that Hallug suffered in having to defend against her complaint. But the proper remedy for Brown's actions does not lie in a criminal prosecution, but rather more appropriately in a motion for sanctions and/or attorney fees. *See* R.C. 2323.51; Civ.R. 11.

{¶27} We hold that Brown's conviction for tampering with records was not supported by sufficient evidence, and we sustain her first assignment of error. Brown's remaining assignments of error are rendered moot by our resolution of her first assignment of error.

{¶28} We reverse Brown's conviction for tampering with records and discharge her from further prosecution for this offense.

Judgment reversed and appellant discharged.

**ZAYAS, P.J.**, and **CROUSE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

12