JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant, the administrator of the estate of Diane Kutnick,[1] appeals from court orders granting summary judgment for the defendants in these three consolidated actions, asserting that the court erred by granting each of the defendants' motions and by denying plaintiff's motion. We find no error in the court's decisions, so we affirm.
 i. PROCEDURAL HISTORY {¶ 2} Attorneys John and Peggy Widder filed the first of these three cases in Shaker Heights Municipal Court to recover their fees for the successful defense of Diane Kutnick in an involuntary commitment proceeding. Kutnick counterclaimed, asserting that the Widders disclosed confidences and breached their fiduciary duties to her in a guardianship proceeding which the Widders instituted against her. This action was eventually certified to the Cuyahoga County Common Pleas Court and became Case Number CV-319302.
 {¶ 3} Kutnick filed the second action, Case Number CV-292712, in common pleas court against her psychiatrist, Dr. Philip J. Fischer, M.D., and attorney Richard C. Klein. Kutnick alleged that Fischer breached his fiduciary duty to Kutnick and violated the physician-patient privilege and thereby caused Kutnick to suffer emotional distress. Kutnick further claimed that Klein acted in concert with the Widders to institute guardianship proceedings against Kutnick, and disclosed confidential information to the probate court in violation of the Widders' fiduciary duties, the attorney-client privilege, and the physician-patient privilege. Klein sought indemnity and contribution from John Widder via a third-party complaint.
 {¶ 4} Finally, Kutnick filed a separate action, Case No. CV-299085, against John and Peggy Widder, claiming that they, Fischer and Klein disclosed confidential information in violation of their fiduciary duties, the attorney-client privilege, and the physician-patient privilege. The Widders counterclaimed for their fees in representing Kutnick in the commitment proceeding.
 {¶ 5} All three cases were consolidated before the common pleas court. All parties moved for summary judgment on Kutnick's claims. The court granted summary judgment for defendant Klein without opinion. It further granted judgment for the Widders and for Fischer; a separate opinion accompanied each of those judgments.
 {¶ 6} The court concluded that the Widders did not breach any duty of confidentiality to Kutnick by applying to place her under guardianship. The court also determined that Kutnick was not prejudiced by Mr. Widder's request to be appointed as her guardian, because the court in the guardianship proceeding actually appointed someone else. Finally, the court held that Kutnick did not have a cause of action against her attorneys for violation of disciplinary rules.
 {¶ 7} The court held that Dr. Fischer reasonably believed his actions complied with the terms of a release under which Kutnick authorized Fischer to discuss her health care and related matters with the Widders. The court also found that Kutnick did not take reasonable steps to protect the physician-patient privilege by objecting to Fischer's testimony in the guardianship proceeding.
 {¶ 8} Kutnick attempted to appeal these rulings but her appeal was dismissed for lack of a final appealable order. She then moved the common pleas court for a judgment entry finding no just reason for delay in entering final judgment on these claims, pursuant to Civ.R. 54(B). While that motion was pending, Kutnick died, and her attorney moved the court to substitute the administrator of her estate as the plaintiff in this action. The court granted both of these motions on September 4, 2002. The administrator of Kutnick's estate then filed this appeal.
 i. FACTUAL BACKGROUND {¶ 9} The evidence presented with the parties' summary judgment motions discloses the following undisputed facts. Dr. Fischer began treating Kutnick for psychiatric illness in 1991. Throughout their relationship Dr. Fischer cooperated with attorneys at Kutnick's request to assist Kutnick with various legal matters.
 {¶ 10} In 1994, Kutnick retained the Widders to represent her in her capacity as executor of her mother's estate. In May 1994, Kutnick provided Dr. Fischer with the following release:
v. I, Diane R. Kutnick, hereby give Philip Fischer, M.D. permission to discuss my health care and related matters with my attorneys, John M. Widder and Peggy M. Widder.
vi. I hereby release the said Dr. Fischer from any and all liability with regard to such discussions with the above-named attorneys.
vii. By signing the herein release, I specifically waive the doctor/patient confidentiality privilege as to my above-named attorneys, while specifically retaining such privilege with regard to all others unless specifically waived by me in a separate document.
 {¶ 11} On July 14, 1994, Kutnick presented at the emergency room of Hillcrest Hospital seeking assistance for an alleged poisoning. She was transferred to Laurelwood Hospital that evening. Hillcrest Hospital officials initiated involuntary commitment proceedings. Kutnick retained the Widders to represent her in these proceedings. Dr. Fischer testified at the hearing. The court ultimately determined that the statutory test for involuntary commitment had not been met and ordered Kutnick discharged. The physician-patient relationship between Dr. Fischer and Kutnick was terminated at this time, although the attorney-client relationship between the Widders and Kutnick continued.
 {¶ 12} On July 26, 1994, John Widder applied to the Cuyahoga County Probate Court for appointment as Kutnick's guardian. Attorney Richard Klein represented Widder in this proceeding. Kutnick retained new counsel to represent her in connection with both the guardianship proceedings and her mother's estate, and terminated the Widders' representation.
 {¶ 13} At the Widders' request, Dr. Fischer prepared a physician's certificate for filing with the court which included his diagnosis and evaluation of Kutnick's mental condition. Dr. Fischer indicated that Kutnick suffered from a delusional disorder (paranoid type), severe obsessivecompulsive disorder, dissociative disorder, and borderline personality disorder; that her judgment was impaired; that she was unable to make relevant decisions because of her paranoia, anxiety, and depression; that she could not perform basic self-care; that she was "emotionally paralyzed from carrying out the most routine activities of daily living"; and that her living conditions were unhealthy because of her inability to organize her thoughts and affairs. An independent investigator for the probate court recommended that Kutnick be placed under guardianship.
 {¶ 14} The court held a guardianship hearing on September 27, 1994. Dr. Fischer submitted an affidavit to the court in lieu of testifying. Another hearing was held on March 29, 1995, after which the court appointed attorney Nellie Johnson as Kutnick's guardian. The probate court vacated this judgment on June 20, 1995 on Kutnick's motion.
 i. LAW AND ANALYSIS {¶ 15} We review de novo the common pleas court's decisions to grant summary judgment for the defendants, applying the same test that the trial court applied. Summary judgment is appropriate only if (a) there is no genuine issue as to any material fact that remains to be litigated, (b) viewing the evidence in the light most favorable to the party opposing the motion, reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-movant, and (c) the moving party is entitled to judgment as a matter of law. See, e.g., Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 16} Kutnick supports her claims with several alternative theories. Some of these theories are based on legal principles which do not afford her with a cause of action. For example, Kutnick asserts the defendants should be held liable for breaches of the attorney-client privilege and the physician-patient privilege. These privileges allow the client (or patient) to preclude attorney (or physician) testimony about confidential matters. They are not rights, the violation of which might entitle the client to damages. Testimonial privileges are not the source of tort duties of care upon which Kutnick might base a cause of action.
 {¶ 17} In addition, Kutnick claims the Widders should be liable to her because they violated the Code of Professional Responsibility. An attorney's professional obligations under the disciplinary rules do not necessarily translate into tort duties the attorney owes to his or her client which, if breached, may be the subject of a malpractice claim. The purpose of the disciplinary rules is to protect the public interest and ensure that members of the bar are competent to practice their profession. Fred Siegel Co., L.P.A. v. Arter Hadden (1999),85 Ohio St.3d 171. These purposes are different from the purposes underlying tort law, which provides a means to redress a person harmed by tortious conduct. Id. Thus, the only authorized sanctions for violation of the disciplinary rules is a disciplinary action, which may result in reprimand, suspension, or disbarment of the subject lawyer by the Ohio Supreme Court. The rules do not create a claim for civil liability. AmericanExpress Travel Related Services Co. v. Mandilakis (1996),111 Ohio App.3d 160, 166. "It is well established that the violation of a disciplinary rule does not create a private cause of action." Montali v. Day, Cuyahoga App. No. 80327, 2002-Ohio-2715, at ¶ 35.
 {¶ 18} With these principles in mind, we now address Kutnick's claims.
A. Kutnick's Claims Against the Widders
 {¶ 19} Kutnick's first assignment of error challenges the summary judgment in favor of the Widders. Kutnick alleges that the Widders breached a duty of loyalty by taking a position adverse to her in guardianship proceedings, and disclosed in those proceedings confidential information they acquired in the course of their professional relationship with her.
 {¶ 20} In order to prove that these actions constituted malpractice, Kutnick must show "* * * (1) an attorney-client relationship giving rise to a duty, (2) breach of that duty, and (3) damages caused by the breach." David v. Schwartzwald,Robiner, Wolf Rock (1992), 79 Ohio App.3d 786, 797-98.
 {¶ 21} There is little doubt that there was an attorney-client relationship between Kutnick and the Widders. The real issue is the duties which Kutnick claims this relationship imposed. The existence of a duty in tort depends upon the relationship of the parties and the foreseeability of injury to someone in plaintiff's position. Simmers v. Bentley Constr. Co.
(1992), 64 Ohio St.3d 642, 645.
 {¶ 22} Kutnick's claim for malpractice must fail to the extent it is based on the Widders' alleged breach of a duty of loyalty by taking a position adverse to Kutnick in the guardianship proceeding. Kutnick relies upon DR 7-101(A)(3) of the Code of Professional Responsibility for this claimed duty. Canon 7 describes an attorney's obligation to represent his or her client zealously. DR 7-101 specifically prohibits an attorney from intentionally prejudicing or damaging the client during the course of the professional relationship.
 {¶ 23} An attorney representing an incompetent has special responsibilities, as the ethical considerations under Canon 7 demonstrate. See EC 7-12. We do not believe that any tort duty of loyalty precludes an attorney from pursuing the client's best interests by seeking a court determination of the client's competency and the appointment of a guardian in a proceeding separate from that in which the attorney is representing the client. The torts of malicious civil prosecution and abuse of process are available to the extent the client claims the attorney pursued the guardianship action without probable cause or for some ulterior purpose. See Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A. (1994), 68 Ohio St.3d 294. We do not understand this to be the basis of Kutnick's claim here.
 {¶ 24} Even if we were to find that DR 7-101 created a tort duty of care, there is no evidence that the application for guardianship was intentionally prejudicial or damaging to Kutnick. Admittedly, Kutnick did not want a guardian, but given her history of mental problems and the question as to her competency, there is no evidence the Widders' application for appointment of a guardian was intentionally harmful. Furthermore, the allegedly prejudicial and damaging statements by the Widders were not made during the course of their professional relationship. They were made in a new proceeding. Therefore, even if we were to find that a violation of DR 7-101(A)(3) constituted an actionable tort, we would not find any violation here. Cf.Montali v. Day, Cuyahoga App. No. 80327, 2002-Ohio-2715, at ¶¶ 36-38, 42, 44-50 (genuine issues of fact precluded summary judgment on malpractice claim with respect to attorney's alleged failure to deliver client funds).
 {¶ 25} Kutnick also claims the Widders breached a duty of care by disclosing her confidences and secrets to the probate court in the guardianship proceeding. Although an attorney's ethical obligation to preserve his or her client's confidences and secrets under DR 4-101 does not provide Kutnick with a cause of action, the tort of invasion of privacy imposes liability on a party who discloses medical information or other personal information of another without the other's consent.[2]Alexander v. Culp (1997), 124 Ohio App.3d 13; Rothstein v.Montefiore Home (1996), 116 Ohio App.3d 775, 780; Greenwood v.Taft, Stettinius Hollister (1995), 105 Ohio App.3d 295.
 {¶ 26} Housh v. Peth (1956), 165 Ohio St. 35, is the seminal case in this area. In Housh, the court held that an actionable invasion of privacy occurs with (a) the unwarranted appropriation or exploitation of one's personality, (b) the publicizing of private affairs with which the public has no legitimate concern, and (c) the wrongful intrusion into one's private activities. Id., at paragraph two of the syllabus. The tort alleged here would be the publicizing of private affairs. The elements of this tort are (a) public disclosure of (b) a clearly private fact, (c) the nature of which is such that making it public would be highly offensive and objectionable to a reasonable person. Greenwood, 105 Ohio App.3d at 303.
 {¶ 27} Under the doctrine of absolute privilege, statements made in a judicial proceeding which bear some reasonable relationship to the proceeding are not actionable. M.J. DiCorpo,Inc. v. Sweeney (1994), 69 Ohio St.3d 497, 505. This privilege precludes actions for invasion of privacy as well as defamation. See, e.g., Pisani v. Pisani (Dec. 11, 1997), Cuyahoga App. No. 72136. There is no question that the attorney's statements in this case were part of and relevant to the guardianship proceedings. See Hecht v. Levin (1993), 66 Ohio St.3d 458. Therefore, they were absolutely privileged. Accordingly, we find no error in the court's judgment in favor of the Widders.
 {¶ 28} Furthermore, a cause of action for invasion of privacy is personal to the individual whose privacy is allegedly invaded, and lapses with his or her death.[3] Leach v. Shapiro
(1984), 13 Ohio App.3d 393, 398; Rosenfeld v. Shafron (August 27, 1997), Cuyahoga App. No. 52585. Therefore, the question whether the court properly entered summary judgment for the Widders on this claim is a moot point. Even if summary judgment was not appropriate at the time it was entered, the court should have dismissed the matter when it was notified that Kutnick was deceased. Therefore, we affirm the judgment in favor of the Widders.
 {¶ 29} Kutnick's Claims against Dr. Fischer.
 {¶ 30} Kutnick also urges that the court erred by entering summary judgment for Dr. Fischer. Kutnick claims that Dr. Fischer made unauthorized public disclosures of private medical information which he learned through the physician-patient relationship. She claims he made these disclosures in a physician's certificate filed with the probate court to initiate the guardianship proceeding and in an affidavit submitted to the court in lieu of oral testimony. Kutnick further claims that these disclosures were not authorized by the release she signed.
 {¶ 31} In Biddle v. Warren Gen. Hosp. (1999),86 Ohio St.3d 395, paragraph one of the syllabus, the Ohio Supreme Court held that an independent tort exists under Ohio law for the unauthorized, unprivileged disclosure of nonpublic medical information to a third party that a physician or hospital has learned through a physician-patient relationship. This duty of confidentiality is not absolute. "[A] physician or hospital is privileged to disclose otherwise confidential medical information in those special situations where disclosure is made in accordance with a statutory mandate or common-law duty, or where disclosure is necessary to protect or further a countervailing interest which outweighs the patient's interest in confidentiality." Id., 86 Ohio St.3d at 402.
 {¶ 32} This is the situation we find in this case. First, as noted above, there is an absolute privilege for statements made in a judicial proceeding so long as the statement bears some reasonable relationship to the proceeding. The societal interest in encouraging uninhibited testimony, without fear of civil liability, outweighs the patient's interest in maintaining the confidentiality of the physician-patient relationship.[4]
There is no doubt that Dr. Fischer's statements were made in and relevant to the guardianship proceedings. Therefore, Dr. Fischer is not subject to liability for any statements he made to the court regarding Kutnick.
 {¶ 33} Furthermore, there is a strong societal interest in protecting and caring for mentally ill persons who are unable to care for themselves. See In re Miller (1992), 63 Ohio St.3d 99,108. This interest is evidenced by the statutory procedures for appointment of guardians under R.C. Chapter 2111. The patient's treating psychiatrist is generally in the best position to determine whether the patient is able to care for him- or herself, and thus is the most logical person to provide evidence to the probate court when necessary. This interest outweighs the patient's interest in maintaining the confidentiality of the physician-patient relationship. When competency is in question, the patient's competency to decide whether to disclose confidential information to the court must be considered questionable as well. Therefore, we hold that a physician is qualifiedly privileged to disclose a patient's mental condition to the probate court in connection with guardianship proceedings.
 {¶ 34} We recognize that the patient can still preclude the disclosure by asserting the physician patient privilege in the guardianship proceedings. If the patient does so, the court may need to appoint a physician to examine the alleged incompetent. See R.C. 2111.03.1. The issue here is not whether the physician can be prevented from testifying, however, but whether he is subject to civil liability for damages if he does.
 {¶ 35} Dr. Fischer was privileged to disclose Kutnick's medical condition to the probate court in connection with the guardianship proceedings. Accordingly, the court properly entered summary judgment in his favor.[5]
 {¶ 36} Kutnick's Claim Against Richard Klein
 {¶ 37} Kutnick also claims the court erred by entering summary judgment for Richard Klein, the attorney who represented the Widders in the guardianship proceeding. She claims that, because Klein was the Widders' attorney, Klein owed the same duties to Kutnick that the Widders did. We disagree.
 {¶ 38} Kutnick relies upon Arpadi v. First MSP Corp.
(1994), 68 Ohio St.3d 453 for the proposition that Klein owes fiduciary duties to her. Arpadi is inapposite. In Arpadi, the Supreme Court held that an attorney representing a general partner in connection with partnership matters also had an attorney-client relationship with the limited partners, because of the fiduciary relationship between the general partner and limited partners with regard to partnership matters. Therefore, the attorney could be held liable to the limited partners for breaching a duty of care to protect their interests. In this case, Klein did not represent the Widders with respect to a matter in which the Widders had a fiduciary duty to Kutnick. The Widders were not representing Kutnick in the guardianship proceedings, and did not owe her any duty in those proceedings. Klein did not owe any duty to represent Kutnick's interests in the guardianship proceedings. She had her own counsel. "As a general rule, an attorney is liable to his client alone, not to third parties, for negligence in the conduct of his professional duties." American Express Travel Rel. Servs. Co. v. Mandilakis
(1996), 111 Ohio App.3d 160, 165. Kutnick concedes that Klein did not represent her. Therefore, Klein could not have breached any duty of care to Kutnick. Furthermore, Klein's statements to the court regarding Kutnick in the guardianship proceeding were absolutely privileged. For these reasons, the court properly entered summary judgment for Klein.
 {¶ 39} Denial of Summary Judgment for Kutnick.
 {¶ 40} Having concluded that the court properly entered summary judgment for each of the defendants on Kutnick's claims, Kutnick's assertion that the court should have entered summary judgment in her favor is a moot point. Therefore, we overrule the fourth assignment of error.
Affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Anne L. Kilbane, J. concurs in part and dissents in part (seeseparate opinion).
 Diane Karpinski, J. concurs in judgment only (see separateopinion).
[1] To avoid unnecessary confusion, we will refer to both Diane Kutnick and the administrator of her estate as "Kutnick."
[2] Notably, the Widders were parties to the guardianship litigation; they were not acting as counsel. Therefore, cases which allow the court to disqualify an attorney who represents an interest adverse to his or her former client are inapposite. See, e.g., Sarbey v. National City Bank (1990), 66 Ohio App.3d 18,23-24.
[3] The personal nature of this cause of action should be contrasted with the duration of the attorney-client testimonial privilege, which survives the death of the client. Taylor v.Sheldon (1961), 172 Ohio St. 118, 122.
[4] As noted elsewhere in this opinion, the patient's ability to assert the physician-patient privilege to preclude the testimony in the first place is not at issue here. We are only concerned with the patient's ability to assert a civil claim afterward.
[5] Both the parties and the common pleas court argued extensively about whether the court filings at issue here were within the scope of the written release Kutnick provided to Dr. Fischer. It is unnecessary for us to address this question, given our finding that the disclosure was privileged. We note, however, that the release only allowed Fischer to discuss Kutnick's medical condition with her attorneys, not with the court. Thus, we cannot say, as a matter of law, that the disclosures to the court were "authorized" by the release, despite Kutnick's history of freely consenting to the disclosure of her mental health history in connection with various legal proceedings.
Nor was Fischer authorized to make the disclosures because he was asked to do so by the Widders. Given the adversarial nature of a guardianship proceeding, Fischer could not reasonably believe that the Widders' request for a physician's certificate and affidavit were the equivalent of a request by their client.