ANITA LASTER MAYS, J.:
*395 {¶1} Plaintiff-appellant Helene Frum Pincus ("Helene") appeals the trial court's grant of motions for judgment on the pleadings in favor of defendants-appellees, husband and wife, David Pincus ("David") and Arlene Pincus ("Arlene"), brother-in-law and sister-in law of Helene, Evan T. Byron ("Byron"), the attorney for David and Arlene, and Byron's former law firm, Lieberman, Dvorin & Dowd, L.L.C. ("LDD"). We affirm the trial court's judgments.
I. Background and Facts
{¶2} On September 15, 2016, the family-owned Pincus Bakery closed after operating for 48 years in the University Heights community. In June 2017, Byron filed suit against Helene on behalf of Arlene and David who are judgment creditors of Helene's husband, Steven Pincus ("Steven"). The bakery was founded by the parents of Steven and David Pincus. Steven worked as a full-time manager for 30 years and David worked part-time from 1992 to 2013. Reportedly, only Steven and his wife Helene made substantial monetary contributions to the business.
{¶3} Prior to the bakery closing Arlene, as legal representative for David, sued Steven and the bakery in December 2014, claiming mismanagement by Steven and receipt of a disproportionate share of the business income.[1] Steven and the bakery counterclaimed. The bakery was forced to close in spite of a $50,000 cash gift by Helene's sister and brother-in-law, the Cohens. The Cohens also purchased Steven and Helene's home at the foreclosure sheriff's sale and allowed them to remain in residence.
{¶4} In October 2016, Steven and the bakery consented to a $500,000 judgment in the 2014 case and dismissed their counterclaims. Helene states that Arlene, David, and Byron waged a campaign of "harassment and intimidation against Helene and her family * * * to coerce Helene and/or the Cohens to satisfy the judgment."
{¶5} Arlene hired Byron and LDD to pursue the judgment. On June 7, 2017, Byron and LDD, on behalf of Arlene and David, filed a fraudulent transfer action against Helene purportedly including allegations against Helene that were previously made in the 2014 action against Steven and the bakery. On June 23, 2017, Byron sent a copy of the fraudulent transfer complaint to the Cleveland Jewish News newspaper ("CJN") purportedly with the full knowledge of David, Arlene, and LDD. The paper subsequently published the complaint.[2]
*396 {¶6} Helene filed the instant case on October 2, 2017, arguing that the appellees acted maliciously because the fraudulent transfer complaint contained "numerous false and defamatory complaints against Helene." Appellant's brief, p. 5. Helene posits that
The decision to republish such salacious allegations to a local media outlet whose target audience specifically includes Helene's neighbors, family, friends and acquaintances gives rise to a reasonable inference that the [a]ppellees acted with malice and for an ulterior motive, to wit, to coerce Helene into paying off, or soliciting funds from the Cohens to pay off, the consent judgment against her husband.
Id. at p. 5-6.
{¶7} Count 1 of the complaint in the instant case claimed Arlene, David, and Byron made false or misleading defamatory statements against Helene at LDD's direction or acquiescence. Count 2 alleged Byron published the defamatory statements with the knowledge of the other parties to harass and embarrass Helene. Count 3 alleged invasion of privacy, right of seclusion, or nonpublicity by defendants-appellees. Count 4 asserted invasion of privacy and false light. Count 5 alleged intentional infliction of emotional distress and Count 6 alleged that defendants-appellees perverted and abused the legal process by publicizing the complaint. Appellees filed answers and subsequently moved for judgment on the pleadings pursuant to Civ.R. 12(C).
{¶8} On February 13, 2018, the trial court granted judgment on the pleadings for Byron and LDD. The trial court held:
Defendants Evan T. Byron and Lieberman, Dvorin and Dowd, LLC are entitled to judgment as a matter of law on all claims. Under the doctrine of absolute privilege, statements made in a judicial proceeding which bear some reasonable relationship to the proceeding are not actionable. See Surace v. Wuliger , 25 Ohio St.3d 229, 495 N.E.2d 939 (1986) ; Kutnick v. Fischer , 8th Dist. Cuyahoga No. 81851, 2004-Ohio-5378 [2004 WL 2251799]. Here, statements made in the complaint bear some reasonable relationship to the proceeding and are absolutely privileged. Further, the court finds there is no evidence defendants acted with malice or that defendants actually knew or recklessly disregarded the truth.
Journal entry No. 102513702 (Feb. 13, 2018).
{¶9} On February 21, 2018, the trial court granted judgment on the pleadings for Arlene and David:
The court finds that defendants Arlene Pincus and David Pincus are entitled to judgment as a matter of law on all claims. Under the doctrine of absolute privilege, statements made in a judicial proceeding which bear some reasonable relationship to the proceeding are not actionable. See Surace v. Wuliger , 25 Ohio St.3d 229, 495 N.E.2d 939 (1986) ; Kutnick v. Fischer , 8th Dist. Cuyahoga No. 81851, 2004-Ohio-5378 [2004 WL 2251799]. Here, statements made in the complaint bear some reasonable relationship to the proceeding and are absolutely privileged. Further, the court finds there is no evidence defendants acted with malice or that defendants actually knew or recklessly disregarded the truth.
Journal entry No. 102609878 (Feb. 21, 2018).
{¶10} Helene appeals the trial court's judgments. We affirm.
II. ASSIGNMENTS OF ERROR
{¶11} Helene proffers three assignments of error:
*397 I. The trial court erred in applying the doctrine of absolute privilege to republication of defamatory statements in a complaint to a disinterested third party.
II. The trial court erred in granting judgment on the pleadings where allegations relating to malice were sufficiently stated.
III. The trial court erred in granting judgment on the pleadings as to abuse of process.
III. STANDARD OF REVIEW
{¶12} A Civ.R. 12(C) motion for judgment on the pleadings is effectively a delayed Civ.R. 12(B)(6) motion to dismiss. Chromik v. Kaiser Permanente , 8th Dist. Cuyahoga No. 89088, 2007-Ohio-5856, 2007 WL 3203111, ¶ 6, fn. 2.
{¶13} The motion poses questions of law, with a de novo standard of review, and our inquiry is limited to "the allegations in the pleadings and any writings attached to those pleadings." Id. , citing Peterson v. Teodosio , 34 Ohio St.2d 161, 297 N.E.2d 113 (1973).
We review a ruling on a motion for judgment on the pleadings de novo, based solely on the allegations of the pleadings. Judgment on the pleadings is appropriate if, "after construing all material allegations in the complaint, along with all reasonable inferences drawn therefrom in favor of the nonmoving party, the court finds that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief." Tenable Protective Servs., Inc. v. Bit E-Technologies, L.L.C. , 8th Dist. Cuyahoga No. 89958, 2008-Ohio-4233 [2008 WL 3870666], ¶ 12.
Bozeman v. Cleveland Metro. Hous. Auth. , 8th Dist. Cuyahoga Nos. 92435 and 92436, 2009-Ohio-5491, 2009 WL 3321402, ¶ 8, fn. 3.
IV. ANALYSIS
A. Absolute Privilege
{¶14} Defamation occurs under Ohio law,
"when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business, or profession.' "
Am. Chem. Soc. v. Leadscope, Inc. , 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77, quoting Jackson v. Columbus , 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9 quoting A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council , 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995).
{¶15} Generally,
"To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement."
Id. , quoting Pollock v. Rashid , 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1st Dist.1996).
{¶16} It is within this court's purview to decide " 'as a matter of law whether certain statements alleged to be defamatory are actionable or not.' " Id. at ¶ 79, quoting Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. , 6 Ohio St.3d 369, 372, 453 N.E.2d 666 (1983). We examine the " 'the totality of the circumstances' " and read *398 " 'the entire publication to determine whether a reasonable reader would interpret it as defamatory.' " Id. , quoting Mann v. Cincinnati Enquirer , 1st Dist. Hamilton No. C-090747, 2010-Ohio-3963, 2010 WL 3328631, ¶ 12, citing Scott v. News-Herald , 25 Ohio St.3d 243, 253, 496 N.E.2d 699 (1986), and Mendise v. Plain Dealer Publishing Co. , 69 Ohio App.3d 721, 726, 591 N.E.2d 789 (8th Dist. 1990).
{¶17} The doctrine of absolute privilege carves out an exception for allegedly defamatory statements. " 'No action will lie of any defamatory statement made by a party to a court proceeding, in a pleading filed in such proceeding, where the defamatory statement is material and relevant to the issue.' " Lynch v. Studebaker , 8th Dist. Cuyahoga No. 88117, 2007-Ohio-4014, 2007 WL 2269470, ¶ 31,[3] quoting Surace v. Wuliger , 25 Ohio St.3d 229, 495 N.E.2d 939 (1986), quoting Erie Cty. Farmers' Ins. Co. v. Crecelius , 122 Ohio St. 210, 171 N.E. 97 (1930).
{¶18} In Surace, the complainant was referenced in a conspiracy and corruption complaint filed in a federal lawsuit by refuse companies who alleged that the defendant refuse companies conspired to reduce competition in the refuse business by engaging in racketeering activities. Surace and others were listed as "known underworld figures" in the complaint though Surace was not a party to the case. Id. at 229-230, 495 N.E.2d 939.
{¶19} Surace filed a defamation suit in the common pleas court against a plaintiff shareholder and his counsel in the federal suit that escalated to the Ohio Supreme Court. The court was faced with the question of whether the doctrine of absolute privilege would apply to shield the alleged defamatory conduct where the information was not "relevant or pertinent" to the pending action. Id. at 230, 495 N.E.2d 939.
{¶20} The Ohio Supreme Court gave due consideration to its prior holdings on the doctrine. The court considered the underlying public policy concern of protecting the federal and Ohio constitutional right of the people to petition the government to redress grievances[4] while safeguarding the competing concern "that the absence of such a privilege would thwart the truth-seeking process if parties to a lawsuit were faced with the possibility of a defamation action" for "statements made concerning any particular individuals." Id. at 231, 495 N.E.2d 939.
"The defense of privilege, or immunity, in cases of defamation does not differ essentially from the privileges, such as those of self-defense, protection of property, or legal authority, available as to assault and battery. It rests upon the same idea, that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation."
Id. , citing Keeton, Dobbs, Keeton & Owen, Prosser and Keeton on the Law of Torts , Section 114, 776 (4th Ed.1971).
{¶21} The Surace court ultimately concluded,
Thus, we hold that as a matter of public policy, under the doctrine of absolute *399 privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears.
Id. at 233, 495 N.E.2d 939.
{¶22} Finally, the court reiterated
We wish to re-emphasize the public policy considerations underlying the doctrine of absolute privilege in judicial proceedings in the test we have formulated today. The most basic goal of our judicial system is to afford litigants the opportunity to freely and fully discuss all the various aspects of a case in order to assist the court in determining the truth, so that the decision it renders is both fair and just. While the imposition of an absolute privilege in judicial proceedings may prevent redress of particular scurrilous and defamatory allegations that tend to harm the reputation of the person defamed, a contrary rule, in our view, would unduly stifle attorneys from zealously advancing the interests of their clients in possible violation of the Code of Professional Responsibility, and would clog court dockets with a multitude of lawsuits based upon alleged defamatory statements made in other judicial proceedings. The proper balance that must be made is that which we have set forth today. We believe that the standard requiring that the alleged defamatory statement bear some reasonable relation to the judicial proceeding in which it appears is the proper restraint which should be made in order to insure the free and open discussion of competing interests that is a necessary part of our adversarial system of justice.
Id. at 235, 495 N.E.2d 939.
{¶23} The court concluded that the privilege applied to Surace's case. The trial court's judgment dismissing the complaint was reinstated.
{¶24} The trial court in this case determined that all claims in the case were protected by the doctrine of absolute privilege. Helene does not challenge the validity of the doctrine as applied to documents filed in judicial proceedings. Instead, Helene offers that the doctrine does not extend to protect appellees who provided copies of the complaint containing false and misleading statements outside of the judicial proceedings.
{¶25} Appellees counter that our decision in Cruz v. English Nanny & Governess School, Inc. , 2017-Ohio-4176, 92 N.E.3d 143 (8th Dist.), controls and that it espouses the policy considerations declared in Surace, supra, to "insure the free and open discussion of competing interests that is a necessary part of our adversarial system of justice." Surace at 235, 495 N.E.2d 939.
{¶26} Cruz, a former nanny, filed suit against her placement agency, nanny school, and related defendants for multiple claims including wrongful termination and defamation arising from her decision to report suspected child abuse. Our discussion in Cruz addressed the propriety of the trial court's sanctions against defendants' counsel under R.C. 2323.51 for providing the media with public information and informing an editor about the scheduling and location of the trial.
{¶27} The trial court sanctioned counsel, holding that counsel violated Prof.Cond.R. 3.6:
"A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be *400 disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."
(Emphasis omitted.) Id. at ¶ 114, quoting Prof.Cond.R. 3.6(a).
{¶28} This court observed that the case " 'was not under seal, and the complaint was available to the public.' " Id. at ¶ 115 quoting Leadscope , 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832 at ¶ 85. " 'The public has a legitimate, constitutionally protected interest in judicial proceedings, and the article provided information to educate and inform the public about the case.' " Id. at id.
{¶29} This court also took note in Cruz of Leadscope 's admonition that
Ohio law imposes no blanket prohibition on an attorney's communications to the media. Attorneys and their clients retain a panoply of First Amendment rights and are free to speak to the public about their claims and defenses provided that they do not exceed the contours of protected speech and ethical rules that impose reasonable and necessary limitations on attorneys' extrajudicial statements. See Prof.Cond.R. 3.6 ("A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter"). "Thus, while we do not muzzle an attorney representing a party in a proceeding, attorneys are not given carte blanche to defame others under the guise of litigation."
Cruz at ¶ 90, citing Leadscope at ¶ 90.
{¶30} This court determined that the attorney's communication "remained within the confines of protected speech." Id. at ¶ 117. The attorney provided the media reporter with "information found in the public record" and "only communicated information about the scheduling of the trial." The attorney did not know whether the information provided to the newspaper would be published or the content of that information. Id. at ¶ 121. There was no gag order in place. This court concluded that the provision of a public document to the media and "merely urging a media outlet to cover a trial" does not constitute "frivolous conduct" and reversed the trial court's judgment. Id. at ¶ 123.
{¶31} Helene further suggests that extension of the absolute privilege to extrajudicial communications has been held to require greater judicial scrutiny, citing Escue v. Sequent, Inc. , S.D.Ohio No. 2:09-CV-765, 2010 WL 3365933 (S.D.Ohio Aug. 24, 2010). Escue involved a claim of contractual tortious interference. Sequent argued that Escue published the false statements set forth in the complaint to Sequent's customers who terminated their contracts with Sequent. The "privilege defenses applicable under defamation law also apply to claims for tortious interference with contract." Id. at 16.
{¶32} The court recognized that absolute privilege applies to oral or written statements during court proceedings that are related to the case pursuant to Surace , 25 Ohio St.3d 229, 495 N.E.2d 939. "[T]he privilege has also been extended, with strict limitations, to extrajudicial communications." Escue at 16, citing Morrison v. Gugle , 142 Ohio App.3d 244, 259, 260, 755 N.E.2d 404 (10th 2001).
In order for an extrajudicial communication to come within the cloak of absolute privilege it must be (1) made in the regular course of preparing for and conducting a proceeding that is contemplated in good faith and under serious consideration, *401 (2) pertinent to the relief sought, and (3) published only to those directly interested in the proceeding.
Id. at id.
{¶33} Since the publication in Escue was the provision of the statements to third-party customers of Sequent, the court held that a qualified privilege may apply to the extent that " 'the publisher and the recipient have a common interest, and the communication is' " " 'reasonably calculated to protect or further' " that interest such as communicating with one who has entered or is considering doing business with the other party. Id. at 16, quoting Hahn v. Kotten , 43 Ohio St.2d 237, 244, 331 N.E.2d 713 (1975). The case was remanded to the trial court to entertain additional evidence on the issue.
{¶34} We also note that, as a matter of law, the article is not defamatory. Revisiting Leadscope, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, American Chemical Society ("ACS") sued Leadscope over patent ownership. Shortly after filing suit, the Columbus Business First newspaper published an article describing the complaint allegations and the comments by Leadscope. Id. at ¶ 8.
The article quoted ACS's outside counsel as follows: "Our motivation in filing suit is to acquire back the protected information that they took from us." The article described both the allegations in the complaint and Leadscope's response, including a statement from Myatt that the lawsuit "has no merit" and a quote from Leadscope's counsel that "[t]he timing of this lawsuit [days before Leadscope was to close a venture-capital deal] speaks volumes as to its invalidity."
Id. The suit advanced multiple claims and counterclaims. Leadscope's counterclaims included tortious interference and defamation.
{¶35} The Ohio Supreme Court determined:
From the views presented in the article, the average reader would learn that the suit had been filed and could easily understand the gist of the claims and defenses from the brief quotes that the parties provided regarding their opinions about the lawsuit.
Moreover, the lawsuit was not under seal, and the complaint was available to the public. The public has a legitimate, constitutionally protected interest in judicial proceedings, and the article provided information to educate and inform the public about the case.
Considering the article as a whole and the fact that the article contained a true and accurate summary of the legal proceedings at the time, we hold that the statements in the article are, as a matter of law, not defamatory.
Leadscope, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 85-86.
{¶36} In the instant case, counsel provided the media with a copy of the complaint that was part of the public record. The article was published on July 6, 2017 and is entitled "Lawsuit Claims Pincus Bakery funds misappropriated." The article advised that the Bakery had become part of a family feud.
{¶37} The article names the parties and their legal counsel and sources the article's content to the Fraudulent Transfer complaint that also references the 2014 case against Steve and the Consent Judgment entry. Statements by Byron are generally prefaced by what he "believes" occurred. The article also states that Helene is named in the second lawsuit "because Byron claims she may hold the $500,000 plus interest."
{¶38} Counsel for Helene is also quoted in the article, stating that the "complaint is *402 filled with unproven allegations." " 'Anybody can sue anyone for anything,' he said. 'Those are just allegations that they're making, which we're going to defend * * *. Just because [Arlene] alleges that, doesn't mean it's true." The article sources the information to the publicly available complaint.
{¶39} We find that our conclusion in Cruz, 2017-Ohio-4176, 92 N.E.3d 143, embracing the defamation analysis in Leadscope , is determinative here and that the attorney's communication "remained within the confines of protected speech." Id. at ¶ 117. The complaint provided to CJN was "information found in the public record." Id. Counsel for both parties commented on the case and information was sourced to the complaint.
{¶40} The record does not support the conclusion that Byron and LDD knew whether the information provided to the newspaper would be published or what the content of any publication would be. Id. at ¶ 121. There was no gag order in place at the time. Id. at ¶ 123.
{¶41} We affirm the trial court's finding that the claims are barred by the doctrine of absolute privilege and reject the position that counsel's provision of a complaint in a pending case to a media outlet that resulted in a balanced report of the case and explanatory statements from both parties removes the claims contained in the complaint from the purview of the doctrine.
{¶42} The first assigned error is without merit.
B. Allegation of Malice and Abuse of Process
{¶43} Our affirming the trial court's judgment granting the motions for judgment on the pleadings because Helene's claim failed based on the doctrine of absolute privilege renders the remaining assigned errors moot. App.R. 12(A).
V. Conclusion
{¶44} The trial court's judgments are affirmed.
EILEEN A. GALLAGHER, A.J., and LARRY A. JONES, SR., J., CONCUR

Pincus v. Pincus , Cuyahoga C.P. No. CV-14-837153.

As counsel advised at oral argument, Arlene dismissed the 2017 judgment collection case without prejudice on September 17, 2018. See Pincus v. Pincus , Cuyahoga C.P. No. CV-17-881468.

Though finding that counsel's conduct was not defamatory, Leadscope also determined "that a client is vicariously liable for its attorney's defamatory statements only if the client authorized and ratified the statements." Leadscope , 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832 at ¶ 89.

First Amendment to the United States Constitution, Article I, Section 16, of the Ohio Constitution.