SURACE, APPELLEE, *v.* WULIGER, APPELLANT, ET AL.

[Cite as Surace *v.* Wuliger (1986), 25 Ohio St. 3d 229.]

(No. 85-1339—Decided August 6, 1986.)

*McCarthy, Lebit, Crystal & Haiman Co., L.P.A., Irwin S. Haiman* and *William A. Barnett,* for appellee.

*William D. Beyer* and *Roger L. Kleinman,* for appellant.

SWEENEY, J. Appellee argues that the due process provision of the Ohio Constitution permits redress of his cause of action because he has no alternative remedy to pursue, inasmuch as he was not named as a party in the RICO action. Appellee maintains that the alleged defamatory pleading is neither relevant nor pertinent to the RICO action, pursuant to this court's prior decisions in *Mauk* v. *Brundage* (1903), 68 Ohio St. 89, and *Bigelow* v. *Brumley* (1941), 138 Ohio St. 574 [21 O.O. 471]. Appellee further contends that such a pertinence standard must necessarily be strict in light of due process considerations and that, therefore, this court should affirm the court of appeals' reversal of this cause.

Appellant argues that statements made in judicial proceedings and pleadings are absolutely privileged, and that the pleading in issue does meet the standards established in *Mauk, supra,* and *Bigelow, supra,* because the pleading was relevant and pertinent to the RICO action. Appellant submits that our decision in *Erie County Farmers' Ins. Co.* v. *Crecelius* (1930), 122 Ohio St. 210, sets forth the public policy rationale underlying the absolute privilege doctrine, which is that the absence of such a privilege would thwart the truth-seeking process if parties to a lawsuit were faced with the possibility of a defamation action for any statements made concerning any particular individuals. Appellant contends that the fact that appellee was not a party to the RICO action is irrelevant, and that appellee does perhaps have an alternative remedy to redress his claimed injury by filing a motion to intervene in the RICO case, and then proffering a motion to strike the alleged defamatory statement pursuant to Fed. R. Civ. P. 12(f). Appellant submits that any doubts concerning relevance or pertinence must be resolved in favor of the pleader, based on public policy grounds, and that other jurisdictions have held that absolute privilege applies even though the libelous statement refers to a person who is not a party to the suit in which the defamatory statement appears. Lastly, appellant contends that affirmance here could subject judges to potential liability for harsh statements made to an attorney or a party in a case, and could force attorneys to violate the Code of Professional Responsibility by not zealously representing clients out of fear of a possible defamation action.

In order to properly resolve the instant controversy, a short review of the policy underlying and precedent supporting the doctrine of absolute privilege is necessary.

The late Dean Prosser once noted that "[t]he defense of privilege, or immunity, in cases of defamation does not differ essentially from the privileges, such as those of self-defense, protection of property, or legal authority, available as to assault and battery. It rests upon the same idea, that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." Prosser, Law of Torts (4 Ed. 1971) 776, Section 114.

In *Mauk, supra,* this court stated at 97-98:

"* * * [I]n order to be privileged, the [defamatory] statement must be pertinent and material to the matter in hand. To be pertinent and material it must tend to prove or disprove the point to be established, and have substantial importance or influence in producing the proper result. * * * Whether or not the occasion gives the privilege is a question of law for the court * * *."

*Mauk* set forth a relatively strict standard which has been variously termed as the "legally relevant" or "pertinence to the occasion" test. A

defamatory statement under this guideline was said to be absolutely privileged only when the statement was material and pertinent to the subject matter in which it appeared. In addition, the *Mauk* court made it clear that it is a question of law for the court to determine whether a statement, alleged to be defamatory, should be accorded absolute privilege.

Then, in *Erie County, supra,* this court held in the syllabus:

"No action will lie for any defamatory statement made by a party to a court proceeding, in a pleading filed in such proceeding, where the defamatory statement is material and relevant to the issue."

This court noted in *Erie County* at 212-213 that the "English rule" allows no action for any defamatory statement made in a pleading, even where the statement is false, malicious or irrelevant to the matter in which it appears. The "American rule," on the other hand, differs only in the respect that the alleged defamatory statement "must be relevant and material to the issue in order to be privileged." *Id.* at 213.

With regard to the public policy considerations inherent in the doctrine of absolute privilege, the *Erie County* opinion observed at 215 that "* * * as an incidental result it [absolute privilege] may in some instances afford immunity to the evil disposed and the malignant slanderer. * * * A contrary rule would manifestly result in a multitude of slander and libel suits, which would not only bring the administration of justice into disrepute, but would, in many instances, deter an honest suitor from pursuing his legal remedy in a court of justice."

Thus, in *Erie County,* this court enunciated the public policy underlying the absolute privilege doctrine alluded to in *Mauk, supra,* where it was noted at 97 that due process applies generally, unless some other rule of law or public policy considerations demand a contrary application.

In *Bigelow* v. *Brumley, supra,* at 586-588, this court refined and slightly modified the tests set forth in *Mauk* and *Erie County,* by stating that questions concerning the applicability of absolute privilege depend on whether the alleged defamatory statement has reference and relation to the subject matter of the action in which it is found. The *Bigelow* court stopped short of rejecting the *Mauk* test *in toto,* because it found the statement made in *Bigelow* was not defamatory *per se,* and that the statement would be privileged under the *Mauk* standard in any event. The *Bigelow* court noted at 586 that the great majority of American decisions at that time rejected a "relevance" standard because it gave the mistaken impression that the absolute privilege in court proceedings extended only to matters which were "legally" relevant. The court further noted that the majority rule concerning absolute privilege of defamatory statements made in a court proceeding asks the central question of whether the statement made has reference and relation to the subject matter of the action in which it appears. *Id.*

While we are of the opinion that these precedents provide a sound framework for determining the application of absolute privilege, our

review of the prior decisions rendered by this court leads us to conclude that the better rule to be applied, in cases such as the instant cause, is that which is referred to in *Bigelow* as the "majority rule." We believe that the standards developed in *Mauk* are not as comprehensive as the majority rule in insuring that any and all matters germane to a particular lawsuit will be expressed to aid courts in their quest to seek the truth. While we find *Erie County* and *Bigelow* to be relatively correct enunciations of the proper standard to be applied in causes asserting absolute privilege in a judicial proceeding, we believe that the majority rule articulates a more workable standard for deciding when the doctrine of absolute privilege should apply, while recognizing the public policy considerations referred to in *Erie County, supra,* at 214-215.[1]

Thus, we hold that as a matter of public policy, under the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears.

We believe that the foregoing standard lends a more precise definition of what the law should be with respect to the doctrine of absolute privilege in judicial proceedings. Our holding herein is not intended as a break with precedent but, rather, it is a logical and natural progression of the law which strikes the proper balance between considerations of constitutional due process and the public policy underlying the necessity of an absolute privilege in judicial proceedings. Although our prior holdings did not clearly embrace the majority rule adopted today, other courts interpreting Ohio law foresaw the appropriateness and inevitability of such a standard. See *Justice* v. *Mowery* (1980), 69 Ohio App. 2d 75 [23 O.O.3d 100]; and *Theiss* v. *Scherer* (C.A. 6, 1968), 396 F. 2d 646.

With regard to the judgment rendered below, we find that the court of appeals was particularly disturbed by the fact that a dismissal of appellee's action herein would leave him with no alternative remedy to combat the perceived harm done to his reputation. The appellate court also opined that absolute privilege is inapplicable here because appellee was not a party to the RICO action in which the alleged defamatory statement was made. The final rationale supplied by the court of appeals in reversing the dismissal of appellee's action was that summary judgment motions would have been more proper in disposing of this case, rather than Civ. R. 12(B)(6) motions to dismiss. We shall address each of these concerns separately.

Appellant contends that appellee does have an alternative remedy to correct the perceived injustice by filing a motion to intervene in the RICO action, and then proceed with a motion to strike the alleged defamatory

---

[1] For an excellent compilation of cases espousing the majority viewpoint adopted herein, see Annotation (1971), 38 A.L.R. 3d 272.

pleading. While we appreciate the inventiveness of appellant's proposed alternative remedy, we doubt seriously whether appellee would be permitted to intervene in the RICO action, because he had no real interest at stake in that proceeding. The unpleasant reality of the doctrine of absolute privilege is that, at times, the party alleged to have been defamed is left with no alternative remedy to pursue. The rationale, of course, is that public policy necessitates free and unencumbered exchange of statements in judicial proceedings in order to assist courts in the truth-seeking process. As cogently stated by the court in *Justice, supra,* at 77:

"Although the result may be harsh in some instances and a party to a lawsuit may possibly be harmed without legal recourse, on balance, a liberal rule of absolute immunity is the better policy, as it prevents endless lawsuits because of alleged defamatory statements in prior proceedings. Sufficient protection from gross abuse of the privilege is provided by the fact that an objective judge conducts the judicial proceedings and that the judge may hold an attorney in contempt if his conduct exceeds the bound of legal propriety or may strike irrelevant, slanderous or libelous matter."

With respect to the fact that the appellee was not a party to the RICO action, we are unpersuaded that this fact should militate against the application of an absolute privilege herein. Courts in other jurisdictions have found that absolute privilege applies to allegations referring to parties and non-parties alike. See *Soter* v. *Christoforacos* (1964), 53 Ill. App. 2d 133, 141-142, 202 N.E. 2d 846, 851; *Spieler* v. *Gottesman* (1961), 12 App. Div. 2d 894, 210 N.Y. Supp. 2d 102, affirmed (1962), 11 N.Y. 2d 815, 227 N.Y. Supp. 2d 437; *Viera* v. *Meredith* (1956), 84 R.I. 299, 301, 123 A. 2d 743, 744. Similarly, we see no compelling reason why the doctrine of absolute privilege should not apply to a non-party under the standards we have set forth today.

Turning our attention to the propriety of a summary judgment motion for the disposition of the instant cause, we disagree with the appellate court that the dismissals rendered by the trial court upon a Civ. R. 12(B)(6) motion were erroneous. As mentioned before, the question of whether absolute privilege applies in a given case is necessarily one of law for the trial court to determine. *Mauk, supra,* at 97-98. In addition, we agree with appellant's assertion that the appellate court's holding in this vein would require him to prove the truth of the allegation contained in the subject pleading before he could assert the privilege. Such has never been the law in this state, as evidenced by our prior holding in *Erie County, supra,* at 213-214, where we found that the privilege may attach regardless of whether the alleged defamatory statement is true.

Having established the standard applicable in the cause *sub judice,* the crucial inquiry left to be determined is whether the alleged defamatory pleading in issue bears some reasonable relation to the RICO action.

In reviewing the substance of the pleading in issue, we find that the RICO complaint alleged that defendants therein, Inland and Palladino, in-

tentionally accepted money from certain individuals whom they believed earned that money by engaging in a pattern of racketeering activity. As appellant submits, the RICO statutes are violated not only by the named RICO defendants alleged to have engaged in a pattern of racketeering activities, but also by the acceptance of investment money from others alleged to have engaged in a pattern of racketeering activities. See Section 1962(a), Title 18, U.S. Code.

In our view, irrespective of whether appellee can be correctly characterized as a "known underworld figure," we believe that the allegation stating that appellee invested in an enterprise alleged to be in violation of the RICO statutes does bear a reasonable relation to the RICO action, and could very well aid the court in determining the legal validity of the RICO complaint. In any event, regardless of whether the allegation that appellee was a known underworld figure who invested in a racketeering enterprise is true,[2] we believe that such allegation does bear a reasonable relation to the RICO action because it alleges that appellee invested in an enterprise in a manner proscribed by the RICO statutes.

In conclusion, we wish to re-emphasize the public policy considerations underlying the doctrine of absolute privilege in judicial proceedings in the test we have formulated today. The most basic goal of our judicial system is to afford litigants the opportunity to freely and fully discuss all the various aspects of a case in order to assist the court in determining the truth, so that the decision it renders is both fair and just. While the imposition of an absolute privilege in judicial proceedings may prevent redress of particular scurrilous and defamatory allegations that tend to harm the reputation of the person defamed, a contrary rule, in our view, would unduly stifle attorneys from zealously advancing the interests of their clients in possible violation of the Code of Professional Responsibility, and would clog court dockets with a multitude of lawsuits based upon alleged defamatory statements made in other judicial proceedings. The proper balance that must be made is that which we have set forth today. We believe that the standard requiring that the alleged defamatory statement bear some reasonable relation to the judicial proceeding in which it appears is the proper restraint which should be made in order to insure the free and open discussion of competing interests that is a necessary part of our adversarial system of justice.

Based upon all of the foregoing, we reverse the decision of the court of appeals and reinstate the judgment of the trial court dismissing appellee's complaint.

*Judgment reversed.*

---

[2] As mentioned before, the truth of an alleged defamatory pleading is not relevant in the determination of whether the doctrine of absolute privilege should apply in a given case. *Erie County, supra,* at 213-214.

CELEBREZZE, C.J., C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

LOCHER, J., concurs in judgment only.

HOLMES, J., concurs in judgment, with opinion.

HOLMES, J., concurring in judgment. I agree that the statements in the RICO pleading are privileged as a matter of law and that complaints predicated thereon are insufficient as a matter of law. Accordingly, the trial court below properly dismissed the within action under Civ. R. 12(B)(6) for "failure to state a claim upon which relief can be granted." However, I do not believe it appropriate to adopt a standard for such privilege which is *absolute*. I, therefore, concur separately in judgment only.

The majority assumes the most difficult possible case of "the evil disposed and the malignant slanderer," *Erie County Farmers' Ins. Co.* v. *Crecelius* (1930), 122 Ohio St. 210, 215, so as to justify the imposition of *absolute* privilege on all such legal writings. I am unwilling to go so far for several reasons, the most immediately recognizable being that we apparently do not have before us the case of one who intentionally and/or with actual malice uttered such statements. If the court were confronted with such a case, involving "the evil disposed and the malignant slanderer," not one merely reckless or negligent, then it would seem to run counter to the best interests of the legal profession to shield such utterance in the name of privilege.

Furthermore, such a narrow exception would not create "a multitude of slander and libel suits" nor "deter an honest suitor from pursuing his legal remedy in a court of justice." *Id.* Instead, the orderly administration of justice would be protected, while one who purposely and in bad faith takes advantage of his privilege could be brought to answer for such professional malfunction. Also, Ohio's Code of Professional Responsibility seems to uphold this view. DR 7-102(A)(5) states: "In his representation of a client, a lawyer shall not: * * * Knowingly make a false statement of law or fact."

Accordingly, I concur in judgment only.