**TOMSU et al.**

v.

**OHIO CIVIL RIGHTS COMMISSION.**

Court of Claims of Ohio.

No. 99–14017.

Decided Aug. 3, 2001.

*Douglas T. Tomsu* and *Melodee M. Tomsu, pro se.*

*Betty D. Montgomery,* Attorney General, and *Peggy W. Corn,* Assistant Attorney General, for the state.

J. WARREN BETTIS, Judge.

Plaintiffs, Douglas T. Tomsu and Melodee M. Tomsu, bring this action against defendant, the Ohio Civil Rights Commission, alleging several claims for relief. The case was tried to the court on the sole issue of liability.

In 1997, plaintiffs owned a rental property in the Dayton, Ohio area. At that time, plaintiffs were also employed as real estate agents for a company known as Mark IV Realty, Inc. In December 1997, the Miami Valley Housing Authority ("Miami Valley") received a telephone complaint from Alberta Dill, alleging that she had applied to rent plaintiffs' property and was told that plaintiffs planned to charge her an additional $100 per month because she had four children. The language of the lease plaintiffs were using at that time provided:

"USE: The premises shall be used solely as a residence with no more than (2) TWO adults and (2) TWO children, and for no other purpose. *For each additional child, there will be an increase in monthly rent of $50.00 (FIFTY).* Any changes in the number of people or names of people to occupy the unit must be reported to the OWNER for prior approval. The premises, or any part thereof, shall not be used for the purpose of trades, business, or occupation; nor shall the premises be used for any unlawful purposes; nor for any other purposes which in the opinion of the OWNER will be detrimental to the reputation of the premises. The premises shall not be sublet nor this lease assigned. All persons of legal age (18 years) must be signers on the lease." (Emphasis added.)

In December 1997, Miami Valley filed a housing discrimination complaint with the United States Department of Housing and Urban Development ("HUD"), alleging that plaintiffs had discriminated against families with children in violation of the Fair Housing Act, Section 3601 *et seq.*, Title 42, U.S.Code. Plaintiffs were notified of the complaint on February 2, 1998, and were informed that it would be processed by the Ohio Civil Rights Commission, defendant herein.

Plaintiffs agreed to mediate the matter; however, the mediation was unsuccessful. Defendant thereafter submitted the case to its Dayton Regional Office for investigation. A final investigative report was completed in September 1998 by Husani Kitwana. Based upon the report, defendant determined that there was "probable cause" to believe that plaintiffs committed the fair housing violations alleged in the complaint. Plaintiffs filed a written request for reconsideration. Defendant denied plaintiffs' request for reconsideration on November 19, 1998.[1]

---

1. While the request for reconsideration was pending, the parties attempted, unsuccessfully, to conciliate.

The case against plaintiffs was set for an administrative hearing pursuant to R.C. Chapter 119, to be held on September 8, 1999. However, prior to the hearing date, plaintiffs filed this action. Thereafter, on March 30, 2000, the administrative proceeding against plaintiffs was dismissed at the request of Miami Valley.

Plaintiffs' lengthy complaint in this case was the subject of defendant's motion to dismiss for failure to state a claim for relief. In granting the motion in part and denying the motion in part, the court ruled that triable issues existed as to plaintiffs' claims for negligence, defamation, intentional infliction of emotional distress, invasion of privacy, and frivolous conduct.

Turning first to plaintiffs' claim of negligence, plaintiffs' primary argument is that defendant failed to provide a fair and impartial opportunity to mediate the dispute, failed to properly investigate the charge of discrimination before making the finding on probable cause, and failed to provide a fair opportunity for conciliation after the complaint was filed. Plaintiffs even argue that the dismissal of the charges against them was improper.

Upon review, the court concludes that plaintiffs are not entitled to relief upon the theory of negligence. In *Helfrich v. Ohio Unemp. Comp. Bd. of Review* (May 20, 1999), Franklin App. No. 98AP–1074, unreported, 1999 WL 333313, the issue for the court of appeals was whether the trial court had erred by granting summary judgment in favor of defendant where plaintiffs alleged that the defendant's hearing officer was unqualified, biased, and had committed several procedural and evidentiary mistakes in denying plaintiffs' claim for benefits. In affirming the trial court's granting of the state's motion to dismiss, the court of appeals stated:

"Appellant contends the trial court improperly dismissed his complaint because it erroneously determined it lacked jurisdiction to hear claims of negligence against the state; however, the Court of Claims was established to hear such actions. R.C. 2743.02. Appellant misreads the trial court's decision.

"No matter how appellant characterizes his claim for relief, he is, in fact, seeking a determination that [the defendant] erred in denying his claim for unemployment benefits. It makes no difference that appellant now alleges [the defendant] was 'negligent' because the hearing officer was unqualified or biased or denied him a right to present witnesses; the claims appellant puts forward, although categorized as negligence, could and should have been raised through the administrative appeals from the unemployment board decision. Appellant had a remedy through the administrative appeal process set forth in R.C. 4141.28, and further appeals to the court pursuant to R.C. Chapter 119. The fact that appellant was unsuccessful in that process does not create a claim for relief for

negligence. Thus, the trial court did not err in dismissing the complaint for lack of subject-matter jurisdiction."

In this case, plaintiffs make the same type of allegations against defendant and its staff as were made by the appellant in *Helfrich*. As was the case in *Helfrich*, a direct action against defendant in this court is not the proper forum to obtain relief. Plaintiffs' allegations of administrative errors, which plaintiffs now characterize as negligence, could have been addressed in an administrative appeal. Moreover, the fact that the charges were dismissed before any final determination was made on the merits rectifies any of the alleged errors or mistakes. Indeed, there was never a final determination by defendant that plaintiffs violated the Fair Housing Law. There is simply no cognizable claim for negligence under these facts. *Helfrich*.

Plaintiffs also base their negligence claims upon defendant's alleged violations of its own Policy Manual and Mediation agreement. Again, if defendant had failed to follow its own mandatory procedures in the course of the administrative proceedings, plaintiffs had a remedy in the form of an administrative appeal. In short, this court has no jurisdiction to consider plaintiffs' negligence claim.

■ With regard to plaintiffs' claim of frivolous conduct, the crux of plaintiffs' case is that defendant pursued Miami Valley's frivolous complaint against them without properly investigating the allegations or providing plaintiffs with a fair opportunity to defend themselves. Plaintiffs cannot prevail upon this claim for numerous reasons.

■■ First, R.C. 2323.51 (attorney fees as sanction for frivolous conduct) applies only to "civil actions," not to administrative hearings. See *State ex rel. Ohio Dept. of Health v. Sowald* (1992), 65 Ohio St.3d 338, 343, 603 N.E.2d 1017. Second, an award of attorney fees under R.C. 2323.51 is generally not available to *pro se* litigants such as plaintiffs. *State ex rel. Freeman v. Wilkinson* (1992), 64 Ohio St.3d 516, 517, 597 N.E.2d 126. Finally, in examining defendant's conduct during the administrative proceedings, the test under R.C. 2323.51 is whether the charges were substantially justified.

In this case, the fair housing complaint filed against plaintiffs was based primarily upon the terms of the lease. The applicable fair housing regulation is found at R.C. 4112.02(H)(4). That section prohibits "[d]iscriminat[ion] against any person in the terms or conditions of * * * renting, leasing, or subleasing any housing accommodations * * * because of * * * familial status * * *."

Plaintiffs have admitted that the lease produced at trial is a true and accurate copy of the lease used in 1997. In the view of the court, plaintiffs' lease, on its face, arguably violates the above-cited provision of the fair housing law; it discriminates in terms of rent based upon the number of children in the

applicant's family. Based upon the language of the lease alone, the court finds that defendant was substantially justified in pursuing the complaint. That is not to say that the complaint is meritorious, but only that the charge was reasonably justified under the circumstances. Consequently, even if defendant could be subject to liability under R.C. 2323.51, plaintiffs have not proven that defendant's conduct was frivolous.

█ With regard to plaintiffs' claim of intentional infliction of emotional distress, the court finds that plaintiffs have failed to prove any conduct on the part of defendant that can be characterized as "extreme and outrageous" as defined in case law. See *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666. Plaintiffs also failed to establish that defendant recklessly or intentionally caused plaintiffs to suffer "serious emotional distress" as is required in order to prove their case. *Id.* Plaintiffs established, at best, that defendant was less than efficient in handling the investigation of the case, and that the delays caused plaintiffs some anxiety. However, as stated above, the matter was eventually resolved in plaintiffs' favor.

█ With regard to the claim for relief in defamation, even if plaintiffs had proven that any of the alleged oral and written statements made by defendant were false, defendant is protected from liability by an absolute judicial privilege, since those statements were reasonably related to the proceedings against plaintiffs. See *Surace v. Wuliger* (1986), 25 Ohio St.3d 229, 25 OBR 288, 495 N.E.2d 939; *Erie Cty. Farmers' Ins. Co. v. Crecelius* (1930), 122 Ohio St. 210, 171 N.E. 97. The same privilege protects defendant from liability for invasion of privacy. See *Johnson v. Scripps Publishing Co.* (C.P.1940), 32 Ohio Law Abs. 423, 18 O.O. 372, 6 Ohio Supp. 13; 3 Restatement of the Law 2d, Torts (1977), Section 652F.

In summary, the court concludes that plaintiffs failed to prove any of their claims and that defendant is entitled to judgment in its favor.

## JOURNAL ENTRY

This case was tried to the court on the sole issue of liability. The court has considered the evidence, and for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

*Judgment for defendant.*

J. Warren Bettis, J., retired, of the Columbiana County Court of Common Pleas, sitting by assignment.