[Cite as *Retail Serv. Sys., Inc v. Organ*, 2022-Ohio-4696.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Retail Service Systems, Inc. et al. | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 22AP-242 |
| v. | : | (C.P.C. No. 20CV-5597) |
| Shawn J. Organ et al. | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 27, 2022

**On brief:** *Arenstein & Anderson Co., L.P.A.* and *Nicholas I. Andersen*, for appellants Retail Service Systems, Inc. et al. **Argued:** *Nicholas I. Andersen.*

**On brief:** *Cooper & Elliot, LLC* and *Charles Cooper, Jr.*, for appellees Shawn J. Organ et al. **Argued:** *Charles Cooper, Jr.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, Retail Service Systems, Inc. et al. ("RSS"), appeals the decision of the Franklin County Court of Common Pleas granting defendants-appellees Shawn J. Organ et al. ("the Organ firm"), summary judgment in this legal malpractice, breach of confidence, and breach of contract case, and asserts two assignments of error.

{¶ 2} The Organ firm was retained in 2012 by RSS to handle collection of debts and prosecution of lawsuits, but RSS terminated the relationship in the fall of 2015 after a dispute regarding legal fees. It is undisputed that the Organ firm was not fully compensated for its work, although there continued to be a disagreement between RSS and the firm as to

the amount of fees to which it was entitled. Subsequently, RSS retained James E. Arnold & Assoc. ("the Arnold firm"), to complete much of the work, but the Organ firm continued to accept small collection payments during the successive years and forwarded them to RSS.

{¶ 3} The Arnold firm filed a new federal trade secret lawsuit in one the of cases previously handled by the Organ firm, and the case settled in 2017. The Organ firm claimed it was due attorney fees on the case in quantum meruit; in furtherance of resolving that dispute the Arnold firm sent the Organ firm a copy of the settlement agreement from the case. The terms of that settlement agreement were confidential, and the Arnold firm's email to the Organ firm forwarding the agreement stated that the settlement and its terms were "to be kept confidential" by the Organ firm. (Nov. 19, 2021 Ex. E attached to Def's Mot. for Summ. Jgmt. at 3 (June 21, 2017 email from Attorney Gerrod Bede).)

{¶ 4} RSS and the Organ firm could not reach an agreement on quantum meruit fees, and in August 2018 the Organ firm sued RSS to collect the fees it claimed were due. And although the trade secret settlement agreement was by its own terms confidential and the Organ firm had been directed to keep the agreement confidential, the settlement amount from that agreement was included in the quantum meruit complaint. A courtesy copy of the complaint was forwarded to the Arnold firm, which immediately informed the Organ firm that the settlement figure had to be redacted. The Organ firm then filed an amended complaint without the figure, but did not file a motion to seal the original complaint. The Arnold firm then prepared and filed a motion to seal the original complaint—an agreed order sealing the original complaint was filed and approved on September 28, 2018.

{¶ 5} RSS then filed this new lawsuit against the Organ firm, alleging that the firm had committed legal malpractice, breach of a confidence, and breach of a contract by

disclosing the trade secret settlement figure in its fee complaint. The Arnold firm's attorney Gerrod Bede, who prepared the motion and order, testified at deposition on behalf of RSS that he charged RSS $814 in attorney fees for the preparation, signing, and filing of the sealing motion and order. (July 20, 2021 Tr. of Gerrod Bede at 19-20.) He also testified that the complaint filed August 9, 2018 was sealed on September 28, 2018, and that he did not know if anyone other than the lawyers for the parties to that fee dispute case had even seen the original complaint. *Id.* at 20-22. No other evidence of financial damage to RSS caused by the Organ firm's disclosure was revealed during the discovery phase of this case. RSS suggested that it could not "yet determine that [the attorney fees are] the full extent of the compensable damages they will sustain as a result" of the disclosure, but offered no other evidence of damage. (Dec. 20, 2021 Pls.' Combined Mot. for Partial Summ. Jgmt. and Resp. to Defs.' Mot. for Summ. Jgmt. at 12.) The trial court subsequently found that the total "financial damages claimed in this case are limited to attorney fees for a four-paragraph motion and the proposed Agreed Order * * *." (Mar. 21, 2022 Decision & Final Jgmt. on Cross-Mots. for Summ. Jgmt. at 7 (citing Civ.R. 30(B)(5) and July 20, 2021 Tr. of Video Dep. of Gerrod Bede at 19-20, 72)).

{¶ 6} Following discovery, the parties filed cross-motions for summary judgment on RSS' claims, and on March 21, 2022, Judge Frye granted the Organ firm's motion for summary judgment and denied RSS' cross-motion for partial summary judgment:

> There is no genuine dispute of material fact as to one case dispositive fact. The only use made of the settlement information conveyed to the [Organ] law firm in 2017 was in a court pleading, as the predicate for a *quantum meruit* fees recovery sought by the law firm. As a matter of law, such conduct was protected by the absolute privilege that attaches to statements made during judicial proceedings which are related to issues in the proceeding. Other arguments by the parties about whether the attorney-client relationship between RSS and the firm had already terminated, the import of the

collection work, and whether any legal malpractice claim was timely brought are therefore moot.

Ohio has a well-settled rule that an absolute privilege attaches to statements made in a judicial proceeding so long as they bear some reasonable relation to the proceeding. The information used here in the [Organ] law firm's complaint bore a very direct relationship to the law firm's *quantum meruit* legal fee claim. * * * The rather insignificant references to amounts actually paid in RSS' prior settlements tied directly to the [Organ] law firm's recovery of the fair value of legal work expended for Mr. Andrew and/or RSS. * * * Thus, references in the 2018 complaint to settlement figures under the circumstances presented support no civil claim. Due to that absolute privilege, summary judgment is **GRANTED** in favor of defendants dismissing plaintiff's complaint.

*Id.* at 7-9. In its summary judgment opinion, the trial court restated the confidential settlement figure for the trade secrets case, and RSS accordingly filed a "Motion to Redact or Seal the Summary Judgment Decision," arguing that the trial court had itself improperly violated the confidentiality of the settlement agreement. The trial court denied that motion in a written order on March 30, 2022. RSS then filed this timely appeal, asserting two assignments of error—first, that the trial court erred in granting summary judgment based on absolute privilege, and second, that the trial court erred by denying its motion to redact or seal.

{¶ 7} Civ.R. 56(C) provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Supreme Court of Ohio has explained this rule as follows:

Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party,

> reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. The burden of showing that no genuine issue of material fact exists falls upon the party who files for summary judgment.

*Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10.  The Court has also specified the relative burdens of movant and nonmovant in a summary judgment context:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

(Emphasis sic.)  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  In deciding summary judgment, the trial court must give the nonmoving party "the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material facts." *Byrd* at ¶ 25.  When reviewing a trial court's decision on summary judgment, an appellate court's review is de novo, and the court applies the same standards as the trial court. *Bonacorsi v. Wheeling & Lake Erie Ry.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.  The appellate court conducts an independent review of the record and stands in the shoes of the trial court. *Jones v. Shelly Co.* 106 Ohio App.3d 440, 445 (1995).

**{¶ 8}** RSS's first assignment of error challenges the trial court's grant of summary judgment, which rested exclusively on that court's conclusion that the Organ firm's disclosure of the confidential settlement amount was protected by privilege. In support of its assignment of error, RSS argues that it had an attorney-client relationship with the Organ firm at the time of the disclosure and that therefore the trial court erred in concluding that the disclosure was protected under absolute litigation privilege.

**{¶ 9}** Ohio's litigation privilege permits the disclosure of certain statements made in furtherance of litigation. In *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986), the Supreme Court quoted a treatise and noted that where the privilege applies, "conduct which would otherwise be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." *Id.* at 231, quoting Prosser, *Law of Torts*, Section 114 (4th Ed.1971). The syllabus of *Surace* held:

> As a matter of public policy, under the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears.

*Id.* at syllabus. This court applied the litigation privilege in a similar context in *Hershey v. Edelman*, 187 Ohio App.3d 400, 2010-Ohio-1992 (10th Dist.) in which we observed that "allegedly false or fraudulent statements made via affidavits and trial testimony by attorneys, parties, or witnesses in a civil lawsuit failed to state a claim for falsification to recover damages, because parties are immune from civil suits for remarks made in connection with a civil action." *Id.* at ¶ 32, citing *Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 17-19 (10th Dist.).

{¶ 10} RSS contends that it had an attorney-client relationship with the Organ firm when it disclosed the settlement figure, and that the firm violated that duty by including the figure in the quantum meruit complaint. The Organ firm responds that it had no duty to keep the settlement amount confidential because there is no evidence in the record that the Organ firm had an attorney-client relationship with RSS in 2017, and that the attorney-client relationship as to the trade secrets matter had ended in 2015 when RSS fired the Organ firm.

As indicated in the quotation from its decision above, the trial court side-stepped the question as to whether RSS and the Organ firm had a continued attorney-client relationship at the time the Organ firm disclosed the settlement figure, because it determined that "[t]he only use made of the settlement information conveyed to the [Organ] law firm in 2017 was in a court pleading" and was therefore protected by the absolute litigation privilege, rendering the issue moot. (Decision at 7.) But the trial court's analysis is fundamentally flawed, as it misunderstands the scope of the litigation privilege. The privilege does not apply to all disclosures in all types of cases; rather, it applies to the disclosure of a limited class of statements made in connection with specific types of claims, most directly to statements alleged to be false made in connection with the prosecution of claims alleging defamation or fraud. The disclosure alleged here is of a truthful but confidential statement made for the purpose of collecting an alleged debt—obviously a different matter.

{¶ 11} And while it is true that the privilege has occasionally been applied to protect statements made in other types of cases, compare, *e.g., Lopinski v. State Farm Mut. Ins. Co.*, 6th Dist. No. L-96-078, 1996 Ohio App. LEXIS 5728 (Dec. 20, 1996) at ¶ 36-45 (applying privilege to aiding and abetting discrimination), the Supreme Court has recently cautioned against its overuse. In *State v. Brown*, ___Ohio St.3d___, 2022-Ohio-4347, the

court observed that while the privilege "is a deeply rooted common-law rule that protects individuals from defamation lawsuits," it described the "English rule" as "broad" and contrasted it with Ohio's version of the rule, which "limits the types of defamatory statements that are considered privileged and limits the circumstances in which the privilege applies." *Id.* at ¶ 20, citing *Surace v. Wuliger*, 25 Ohio St.3d 229, 231-233 (1986).

> Early on, this court acknowledged that there were many views on the litigation privilege, ranging from absolute privilege for *all statements* made during judicial proceedings, to all *relevant statements* made during judicial proceedings, to all *not false and malicious statements* made during judicial proceedings. *Lanning v. Christy*, 30 Ohio St. 115, 118-119 (1876). This court initially adopted the rule that "[n]o action will lie for any defamatory statement made by a party to a court proceeding, in a pleading filed in such proceeding, where the defamatory statement is material and relevant to the issue." *Erie Cty. Farmers' Ins. Co.* [*v. Crecelius,* 122 Ohio St. 210, 212-213, (1930)] at syllabus. The court, recognizing the need to protect litigation participants from *defamation lawsuits*, adopted the rule. *Id.* at 215.

In accordance with this historical understanding, the *Brown* court rejected the application of the privilege as a defense to a tampering with records prosecution, and explicitly reaffirmed that "the litigation privilege provides absolute immunity from civil suits *only for defamatory statements* that were made during judicial proceedings and that were reasonably related to those proceedings." (Emphasis added.) *Id.* at ¶ 31. The court's analysis confirms that the purpose of the litigation privilege is "to protect the administration of justice by preventing a multitude of *slander and libel suits* and by encouraging an honest suitor to pursue his or her legal remedies." (Emphasis in original, internal quotations omitted). *Id.* at ¶ 22.

{¶ 12} Here, there is no indication that the statements disclosed are false—in fact, RSS' claims rest on the fact that the statements were truthful disclosures of privileged information. Moreover, RSS has not attempted to challenge the use of the statements

within the context of a defamation or analogous action. Given the Supreme Court's guidance in *Brown*, we conclude that the trial court erred by holding that the disclosure of the settlement amount was protected by the absolute litigation privilege.

{¶ 13} Notwithstanding, the Organ firm argues that because it did not have an attorney-client relationship with RSS at the time of the disclosure, it cannot be deemed liable for damages caused by the disclosure. Given that the damages RSS has demonstrated are nominal, we are quite sympathetic to the desire of both the trial court and the Organ firm to bring an end to this litigation. But unfortunately, we cannot hold that the record clearly establishes that the attorney-client relationship between RSS and the firm ended prior to the disclosure of the settlement amount.

{¶ 14} Our review of the record indicates that there is a genuine dispute of material fact as to when the attorney-client relationship ended, which affects all three of RSS' claims in this case. Specifically, in February 2018, the Organ firm sent RSS a letter with the heading "Termination of Attorney-Client Relationship," which stated the following:

> I write to let you know that after careful consideration, Organ Cole LLP has decided to end its attorney-client relationship with you and Retail Service Systems, Inc. (collectively, "you"). Through the firm's discussions with you in December 2017, it has become clear that you have no intention of fully paying Organ Cole for the work the firm has done on your behalf. This has eroded the remaining trust between us and made our continued representation of you untenable.

(Letter attached as Ex. 9 to Pls.' Dec. 20, 2021 Combined Mot. for Partial Summ. Jgmt. and Resp. to Defs.' Mot. for Summ. Jgmt.) This letter, alone and apart from any other evidence, indicates that the Organ firm may have believed it still had an attorney-client relationship with RSS in June 2017, when it received the email containing the settlement amount it subsequently disclosed in its August 2018 quantum meruit complaint.

{¶ 15} In light of this evidence and our holding that the litigation privilege does not bar RSS' claims, we conclude that there is a genuine dispute as to when the attorney-client relationship between RSS and the Organ firm ended, and there can be no doubt that the trial court is in the best position to judge to when that relationship terminated. We therefore sustain RSS' first assignment of error, and reverse and vacate the trial court's decision. And given our judgment on its first assignment of error, we conclude that RSS' second assignment of error (challenging the trial court's own use of the settlement figure in its decision) is moot.

*Judgment reversed and vacated.*

SADLER and NELSON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under authority of Ohio Constitution, Article IV,
Section 6(C).

NELSON, J., concurring.

I concur in the majority decision and judgment of this court. But even while I agree that the second assignment of error is moot, I am constrained to observe that it seems perhaps a little rich for RSS to condemn the trial court for quoting from the (sometime public) record of events in adjudicating this litigation that RSS itself launched and asked the trial court to consider. RSS may have certain latitude, I guess, to use this vehicle to ballyhoo or decry the availability of information it claims was wrongfully disclosed; nonetheless, the matter now may be positioned for resolution as expeditiously as appropriate under the law. *Compare* ¶ 13 above; Summary Judgment Decision at 7 ("The financial damages claimed in this case are limited to attorney fees for a four-paragraph motion and the proposed Agreed Order," amounting to a cost of some $814.).

_____